MARY KATE SULLIVAN (State Bar No. 180203)
LAURA R. JACOBSEN (State Bar No. 280543)
lrj@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants Aurora Bank, FSB;
Nationstar Mortgage, LLC (erroneously sued
herein as "Nationstar Mortgage"); Mortgage
Electronic Registration Systems, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| GALE SIMMONS,<br><br>            Plaintiff,<br><br>      vs.<br><br>AURORA BANK, FSB; NATIONSTAR MORTGAGE; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DOES 1-100,<br><br>            Defendants. | Case No. 5:13-cv-0482-HRL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6) AND TO EXPUNGE LIS PENDENS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Filed concurrently with Request for Judicial Notice<br><br>Date:    March 19, 2013<br>Time:   10:00 a.m.<br>Crtrm:  2, 5th Floor<br>Judge:  The Honorable Howard R. Lloyd<br><br>Action Filed:     December 10, 2012<br>Removal Date:   February 4, 2013 |

**PLEASE TAKE NOTICE** that on March 19, 2013, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Howard R. Lloyd in Courtroom 2, of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, defendants Aurora Bank, FSB, Nationstar Mortgage, LLC, and Mortgage Electronic Registration Systems, Inc. will, and hereby do, move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing all of the claims asserted in this action, on the basis that each fails to state a claim for which relief can be granted, and expunging the Lis Pendens recorded against the property, on the grounds that Plaintiff has not established a likelihood of success of a real property claim. This motion is based upon this notice of motion and motion, the following memorandum of points and authorities, the request for judicial notice, and such other and further matters as may be presented to the Court at or before the time set for hearing on this matter.

DATED: February 11, 2013                   Respectfully submitted,

                                           SEVERSON & WERSON
                                           A Professional Corporation

                                           By:      /s/ Laura R. Jacobsen
                                                  Mary Kate Sullivan
                                                  Laura R. Jacobsen

                                           Attorneys for Defendants Aurora Bank, FSB; Nationstar Mortgage Holdings, Inc.; Nationstar Mortgage, LLC; Mortgage Electronic Registration Systems, Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ......................................................................................... 1

II      STATEMENT OF FACTS ........................................................................... 1

III.    LEGAL STANDARD .................................................................................. 3

IV.     THE TENDER RULE BARS THIS SUIT ................................................... 4

V.      PLAINTIFF'S FIRST CAUSE OF ACTION FOR BREACH OF EXPRESS
        AGREEMENTS FAILS AS A MATTER OF LAW ...................................... 5

     A.     The Judicially Noticeable Documents Establish Defendants' Compliance
               With the Deed of Trust. ............................................................................... 5

     B.     Securitization of the Underlying Note is Irrelevant ................................... 7

     C.     Plaintiff Does Not Have Standing to Assert a Breach of the Pooling and
               Servicing Agreement. .................................................................................. 9

VI.     PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED
        AGREEMENTS FAILS AS A MATTER OF LAW ...................................... 10

VII.    PLAINTIFF'S THIRD CAUSE OF ACTION FOR SLANDER OF TITLE FAILS ......... 11

     A.     California Courts Have Repeatedly Rejected Plaintiff's Frivolous Attack on
               MERS. .......................................................................................................... 11

     B.     Plaintiff's Speculation Regarding the Employment of the Signatory Will
               Not Serve to Invalidate the First Assignment. .......................................... 12

     C.     Plaintiff Fails to Allege Damage Arising Out of the Recording of the
               Allegedly False Title Instruments. ............................................................. 14

VIII.   PLAINTIFF HAS NO SECTION 2923.5 CLAIM POST-FORECLOSURE ................... 14

IX.     PLAINTIFF PRESENTS NO VIABLE WRONGFUL FORECLOSURE THEORY ........ 15

X.      PLAINTIFF PLEADS NO FACTS IN SUPPORT OF HER RICO CLAIM ................... 16

XI.     PLAINTIFF DOES NOT HAVE STANDING TO PURSUE A UCL CLAIM,
        WHICH IS DERIVATIVE OF THE OTHER NON-VIABLE CAUSES OF
        ACTION ........................................................................................................ 18

     A.     Plaintiff Lacks Standing to Bring a UCL Claim Because Her Default
               Caused Her Harm. ....................................................................................... 18

     B.     Plaintiff Has Failed to Allege Sufficient Facts to State a UCL Claim. ..... 19

     C.     The UCL Does Not Provide for Monetary Damages. ................................ 19

XII.    THE LIS PENDENS SHOULD BE EXPUNGED IN LIGHT OF PLAINTIFF'S
        FAILURE TO ESTABLISH PROBABLE VALIDITY OF A REAL PROPERTY
        CLAIM .................................................................................................................. 19

XIII. CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Aliberti v. GMAC Mortg., LLC,*
779 F.Supp.2d 242 (D. Mass. 2011) ........................................................ 13

*Aniel v. GMAC Mortg., LLC*
No. C 12-04201 SBA, 2012 WL 5389706, at *5 (N.D. Cal. Nov. 2, 2010) .......... 10

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937 (2009) ..................................................... 3

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) .............................................................. 3

*Banh v. Bank of Am., N.A.,*
No. C11-05744 HRL, 2012 WL 1670211 (N.D. Cal. May 14, 2012) ........ 16, 17, 18

*Bascos v. Fed Home Loan Mortg. Corp.,*
No. 11-3968, 2011 WL 3157063 (C.D. Cal. July 22, 2011) ....................... 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 3

*Benham v. Aurora Loan Servs.,*
No. 09-2059, 2009 WL 2880232 (N.D. Cal. Sept. 1, 2009) ....................... 8

*Bogosian v. CR Title Servs., Inc.,*
No. 5:11-cv-02043 EJD, 2011 WL 2039368 (N.D. Cal. May 18, 2011) .............. 13

*Chua v. IB Prop. Holdings, LLC,*
No. CV 11-05894 DDP, 2011 WL 3322884 (C.D. Cal. Aug. 1, 2011) ................ 13

*Culhane v. Aurora Loan Servs. of Neb.,*
826 F.Supp.2d 352 (D.Mass. 2011) ..................................................... 13

*Deerink v. Bank of NY Mellon, N.A.,*
No. 2:11-cv-01735-MCE-EFC, 2012 WL 3234027 (E.D. Cal. Aug. 6, 2012) ........ 12

*Doe I v. Wal-Mart Stores, Inc.,*
572 F.3d 677 (9th Cir. 2009) .............................................................. 12

*Erickson v. Pardus,*
551 U.S. 89 (2007) ........................................................................... 3

*Ganesan v. GMAC Mortg., LLC,*
2012 WL 4901440 (N.D. Cal. Oct. 15, 2012) ........................................ 10

*Ghuman v. Wells Fargo Bank, N.A.*,
   No. 1:12-CV-00902-AWI-BAM, 2012 WL 2263276 (E.D. Cal. June 15, 2012) .................. 16

*Guerrero v. Greenpoint Mortg. Funding, Inc.*,
   No. 10-15333, 2010 WL 411702 (9th Cir. Oct. 20, 2010) ........................................ 4

*Hafiz v. Greepoint Mortg. Funding, Inc.*,
   652 F.Supp.2d 1039 (N.D. Cal. 2009) ........................................ 8

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ........................................ 3

*In re Correia*,
   452 B.R. 319 (1st Cir. 2012) ........................................ 9

*James v. ReconTrust Co.*,
   No. 11-CV-324, 2011 WL 3841558 (D. Or. Aug. 26, 2011) ........................................ 13

*Junger v. Bank of Am.*,
   No. 11-10419, 2012 WL 603262 (C.D. Cal. Feb. 24, 2012) ........................................ 10

*Lane v. Vitek Real Estate Indus. Grp.*,
   713 F.Supp.2d 1092 (E.D. Cal. 2010) ........................................ 8

*McGough v. Wells Fargo Bank, N.A.*,
   No. C12-0050 THE, 2012 WL 2277931 (N.D. Cal. June 18, 2012) ........................................ 8, 9

*Mena v. JP Morgan Chase Bank, N.A.*,
   No. 12-1257 PSG, 2012 WL 3987475 (N.D. Cal. Sept. 7, 2012) ........................................ 14

*Odom v. Microsoft Corp.*,
   486 F.3d 541 (9th Cir. 2006) ........................................ 17

*Ogilvie v. Select Portfolio Servicing*,
   No. 12-CV-001654-DMR, 2012 WL 3010986 (N.D. Cal. July 23, 2012) ............ 7, 14, 16, 18

*Papasan v. Allain*,
   478 U.S. 265 (1986) ........................................ 3

*Pedersen v. Greenpoint Mortg. Funding, Inc.*,
   ---F.Supp.2d--- No. 2-11-0642 KJM EFB, 2012 WL 4510854 (E.D. Cal. Sept. 30, 2012) ........................................ 9, 11

*Permito v. Wells Fargo Bank, N.A.*,
   No. C-12-00545 YGR, 2012 WL 1380322 (N.D. Cal. Apr. 20, 2012) ........................................ 4

*Reyes v. GMAC Mortg. LLC*,
   No. 11-0100, 2011 WL 1322775 (D.Nev. Apr. 5, 2011) ........................................ 8

iv

*Roque v. Suntrust Mortg., Inc.*,
    No. 5:09-cv-0040, 2010 WL 546896 (N.D. Cal. Feb. 10, 2010) ............................................. 4

*Ryan v. Editions Ltd. W., Inc.*,
    No. C-06-4812-PVT, 2007 WL 4577867 (N.D. Cal. Dec. 27, 2007) ..................................... 14

*Sami v. Wells Fargo Bank, et al.*,
    No. 12-00108, 2012 WL 967051 (N.D. Cal. Mar. 21, 2010) ............................................. 8, 10

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ........................................................................................................ 16

*Sharma v. Wachovia*,
    No. C10-04548 HRL, 2010 WL 4791774 (N.D. Cal. Nov. 18, 2010) ..................................... 4

*Sheppard v. BAC Home Loans Servicing, LP*,
    No. 3:11-cv-00062, 2012 WL 204288 (W.D. Va. Jan. 24, 2012) .......................................... 13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................................... 3

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ............................................................................................... 3

*Wadhwa v. Aurora Loan Servs., LLC*,
    No. 11-1784, 2011 WL 2681483 (E.D. Cal. July 8, 2011) ...................................................... 8

**STATE CASES**

*Abdallah v. United Sav. Bank*,
    43 Cal.App.4th 1101 (Cal. Ct. App. 1996) .......................................................................... 4

*Acoustics, Inc. v. Trepte Constr. Co.*,
    14 Cal.App.3d 887. 813 (Cal. Ct. App. 1971) ...................................................................... 5

*Amalgamated Bank v. Superior Court*,
    149 Cal.App.4th 1003 (Cal. Ct. App. 2007) ................................................................. 19, 20

*Arnolds Mgmt. Corp. v. Eischen*,
    158 Cal.App.3d 575 (1984) ................................................................................................ 4

*Californians for Disability Rights v. Mervyn's, LLC*,
    39 Cal.4th 223 (2006) ...................................................................................................... 18

*Cell-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999) .................................................................................................. 19

*Daro v. Superior Court*,
    151 Cal.App.4th 1079 (Cal. Ct. App. 2007) ....................................................................... 18

*Dimock v. Emerald Props. LLC,*
80 Cal.App.4th 868 (Cal.Ct.App. 2000) ............................................................. 4

*Fontenot v. Wells Fargo Bank, N.A.,*
198 Cal.App.4th 256 (Cal. Ct. App. 2011) ...................................................... 6, 7

*Gomes v. Countrywide Home Loans, Inc.,*
192 Cal.App.4th 1149 (Cal. Ct. App. 2011) ................................................... 9, 11

*Hall v. Time, Inc.,*
158 Cal.App.4th 847 (Cal. Ct. App. 2008) ....................................................... 18

*Herrera v. Fed. Nat'l Mortg. Ass'n,*
205 Cal.App.4th 1495 (Cal. Ct. App. 2012) ..................................................... 12

*Kasky v. Nike, Inc.,*
27 Cal.4th 939 (2002) ..................................................................................... 19

*Lance Camper Mfg. Corp. v. Republic Indemnity Co.,*
44 Cal.App.4th 194 (Cal. Ct. App. 1996) ........................................................ 10

*Lona v. Citibank, N.A.,*
202 Cal.App.4th 89 (Cal. Ct. App. 2011) ........................................................ 15

*Mabry v. Superior Court,*
185 Cal.App.4th 208 (Cal. Ct. App. 2010) ...................................................... 14

*Malcom v. Superior Court,*
29 Cal.3d 518 (1981) ...................................................................................... 20

*Manhattan Loft, LLC v. Mercury Liquors, Inc.,*
173 Cal.App.4th 1040 (Cal. Ct. App. 2009) .................................................... 11

*Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.,*
704 N.W.2d 784 (Neb. 2005) .................................................................... 9, 11

*Nguyen v. Calhoun,*
105 Cal.App.4th 428 (Cal. Ct. App. 2003) ...................................................... 15

*Reynoso v. Paul Fin., LLC,*
No. 09-3225-SC, 2009 WL 3833298 (N.D. Cal. Nov. 16, 2009) ...................... 16

*Shvarts v. Budget Grp., Inc.,*
81 Cal.App.4th 1153 (Cal. Ct. App. 2000) ...................................................... 10

*Skov v. U.S. Bank Nat'l Ass'n,*
207 Cal.App.4th 690 (Cal. Ct. App. 2012) ...................................................... 14

*Stebley v. Litton Loan Servicing, LLP,*
202 Cal.App.4th 522 (Cal. Ct. App. 2011) ................................................... 4, 14

*U.S. Cold Storage v. Great W. Sav. & Loan Ass'n,*
   165 Cal.App.3d 1214 (1985) ................................................................................ 4

**RULES**

Federal Rules of Civil Procedure
        Rule 8 ............................................................................................................ 3, 17
        Rule 9 ................................................................................................................... 17
        Rule 11 ................................................................................................................. 17
        Rule 12 ................................................................................................................... 3

**STATUTES**

United States Code
     Title 18
        § 1961 ................................................................................................................... 17
        § 1962 ..................................................................................................................... 2

Business and Professions Code
        § 17200 *et seq.* ......................................................................................... 2, 18, 19
        § 17203 ................................................................................................................. 19
        § 17204 ................................................................................................................. 18

Cal. Civil Code
        § 2923.5 ....................................................................................................... 2, 14, 15
        § 2924 ................................................................................................................... 15
        § 2934 ..................................................................................................................... 7

Cal. Code of Civil Procedure
        § 405.20 ............................................................................................................... 19
        § 405.31 ............................................................................................................... 19
        § 405.32 ............................................................................................................... 20
        § 481.190 ............................................................................................................. 20
        § 484.090 ............................................................................................................. 20

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants Aurora Bank, FSB ("Aurora"), Nationstar Mortgage, LLC ("Nationstar"), and Mortgage Electronic Registration Systems, Inc. ("MERS", collectively "Defendants") respectfully submit this memorandum of points and authorities in support of their motion to dismiss Plaintiff's complaint.

Plaintiff defaulted on her loan and Defendants foreclosed on the property in accordance with California law, as established by the judicially noticed documents.  Plaintiff now submits a form complaint asserting numerous borderline frivolous legal theories in order to unwind the valid foreclosure without offering to tender the amount due on her loan.

Plaintiff's primary theory relies on the faulty premise that because her note was securitized and sold to a trust pool, only the certificate holders of the trust pool are the "true beneficiary" of the Deed of Trust.  However, courts have universally rejected any argument that securitization somehow impairs a lender's rights under a Deed of Trust, or those of its successors and assigns. Moreover, even if the owners of the trust pool somehow became the "true beneficiary" under Plaintiff's Deed of Trust, MERS still had authority as the nominee of the original lender's "successors and assigns" to assign the trust pool's beneficial interest under the Deed of Trust. Because the first assignment is valid, all subsequently recorded title instruments are also valid.

Further, Plaintiff lost her home because she was unable to make her loan payments.  As such, Plaintiff's injury cannot fairly be attributed to any conduct by Defendants, nor can Plaintiff show that voiding the trustee's sale would be anything other than an exercise in futility.  Plaintiff does not and cannot allege that securitization of her loan changed any of her obligations, nor that she would have been able to perform her obligations but for the transfers in interest.   Defendants respectfully submit that this complaint should be dismissed and the Lis Pendens clouding Defendant Nationstar's title expunged.

## II.   STATEMENT OF FACTS

On or about February 16, 2007, Plaintiff Gale Simmons ("Plaintiff") obtained a $564,800 loan secured by a deed of trust (the "Deed of Trust") on the real property located at 248 Bangor

DEFENDANTS' MOTION TO DISMISS AND EXPUNGE LIS PENDENS

Avenue, San Jose, California 95123. (Req. Judicial Notice ("RJN") Ex. A.  The Deed of Trust was recorded on February 28, 2007, and names American Brokers Conduit as lender, Fidelity National Title Company as trustee, and MERS as the beneficiary and nominee of lender.  *Id.*; Compl. ¶ 10.

On September 21, 2011, MERS, as nominee for American Brokers Conduit and its successors and assigns, executed a Corporate Assignment of Deed of Trust (the "First Assignment") transferring all beneficial interest in the Deed of Trust to Aurora Bank, FSB.  RJN Ex. B; Compl. ¶ 11.  The First Assignment was recorded on November 16, 2011.  *Id.*

On November 18, 2011, Aurora executed a Substitution of Trustee, substituting The Wolf Firm, a Law Corporation ("The Wolf Firm") as trustee under the Deed of Trust.  RJN Ex. C; Compl. ¶ 12.  The Substitution of Trustee was recorded on November 28, 2011.  *Id.*

Plaintiff defaulted on June 1, 2011, and The Wolf Firm recorded a Notice of Default and Election to Sell Under Deed of Trust (the "Notice of Default") on November 28, 2011.  RJN, Ex. D; Compl. ¶ 13.  Plaintiff did not cure her default and The Wolf Firm recorded a Notice of Trustee's Sale on March 1, 2012.  RJN, Ex. E; Compl. ¶ 14.

On July 1, 2012, Aurora executed a Corporate Assignment of Deed of Trust (the "Second Assignment"), transferring all beneficial interest in the Deed of Trust to Nationstar Mortgage, LLC.  RJN, Ex. F; Compl. ¶ 15.  The Second Assignment was recorded on October 9, 2012.  *Id.*

Plaintiff failed to cure her default and the property was sold at a trustee's sale on September 27, 2012.  RJN, Ex. G.  The Wolf Firm recorded the Trustee's Deed Upon Sale on October 9, 2012, granting and conveying all rights, title and interest in the property to the grantee and foreclosing beneficiary, Nationstar.  *Id.*

Plaintiff filed the instant complaint in the Santa Clara Superior Court in and for the State of California on December 10, 2012, alleging the following causes of action: (1) Breach of Express Agreements; (2) Breach of Implied Agreements; (3) Slander of Title; (4) Violation of California Civil Code Section 2923.5; (5) Wrongful Foreclosure; (6) Violation of 18 U.S.C. § 1962; and (7) Violation of the Unfair Business Practices Act (California Business and Professions Code Section 17200).  On December 18, 2012, Plaintiff recorded a Notice of Pendency of Action (Lis Pendens) with the Santa Clara County Recorder as Document Number 22009622.  RJN Ex. H.

On February 4, 2013, Defendants removed the action to this Court, invoking the Court's diversity and federal question jurisdiction.

### III.   LEGAL STANDARD

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555.)  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, a district court construes the complaint in the light most favorable to the plaintiff and accepts as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*,

1   342 F.3d 903, 907 (9th Cir. 2003).

2   **IV.   THE TENDER RULE BARS THIS SUIT**

3       Pursuant to California law, "[a] full tender must be *made* to set aside a foreclosure sale,

4   based on equitable principles." *Stebley v. Litton Loan Servicing, LLP*, 202 Cal.App.4th 522, 526

5   (Cal. Ct. App. 2011) (emphasis in original) (citations omitted); *see also Guerrero v. Greenpoint*

6   *Mortg. Funding, Inc.*, No. 10-15333, 2010 WL 411702, at *1 (9th Cir. Oct. 20, 2010) (holding that

7   plaintiffs "lacked standing to bring a claim for 'wrongful foreclosure,' because they failed to

8   allege actual, full and unambiguous tender of the debt owned on them mortgage."); *Permito v.*

9   *Wells Fargo Bank, N.A.*, No. C-12-00545 YGR, 2012 WL 1380322, at *7 (N.D. Cal. Apr. 20,

10  2012); *Roque v. Suntrust Mortg., Inc.*, No. 5:09-cv-0040, 2010 WL 546896, at *4 (N.D. Cal. Feb.

11  10, 2010); *Sharma v. Wachovia*, No. C10-04548 HRL, 2010 WL 4791774, at *2 (N.D. Cal. Nov.

12  18, 2010).  Here Plaintiff seeks to set aside a completed foreclosure sale, yet fails to even plead an

13  offer to tender the full amount owed under her loan.  "Allowing plaintiff[] to recoup the property

14  without full tender would give [her] an inequitable windfall, allowing [her] to evade [her] lawful

15  debt." *Stebley*, 202 Cal.App.4th at 526; *see also Dimock v. Emerald Props. LLC*, 80 Cal.App.4th

16  868, 877-78 (Cal.Ct.App. 2000) ("[O]ne who is relying upon equity in overcoming a voidable sale

17  must show that he is able to perform his obligations under the contract so that equity will not have

18  been employed for an idle purpose.") (citations omitted).  Because California law requires a

19  plaintiff challenging a foreclosure sale under any cause of action or theory to tender the amount

20  received under the loan, this suit should be dismissed with prejudice.  *See Abdallah v. United Sav.*

21  *Bank*, 43 Cal.App.4th 1101, 1109 (Cal. Ct. App. 1996) (affirming dismissal without leave to

22  amend because a defaulted borrower is "required to allege tender of the amount of [the lender's]

23  secured indebtedness in order to maintain any cause of action for irregularity in the sale

24  procedure."); *U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal.App.3d 1214, 1225

25  (1985) (affirming judgment of nonsuit); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575,

26  578-79 (1984) (affirming dismissal without leave to amend on claims of wrongful foreclosure,

27  fraud, and negligence).

28

## V.  PLAINTIFF'S FIRST CAUSE OF ACTION FOR BREACH OF EXPRESS AGREEMENTS FAILS AS A MATTER OF LAW

**A.**     **The Judicially Noticeable Documents Establish Defendants' Compliance With the Deed of Trust.**

Plaintiff claims that Defendants breached paragraph 22 of the Deed of Trust by recording the Notice of Default and Notice of Trustee's Sale.  Compl. ¶¶ 19-20.[1]  "A complaint for breach of contract must allege (1) the existence of a contract between plaintiff and defendant, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff therefrom.  *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887. 813 (Cal. Ct. App. 1971).  Here, Plaintiff fails to allege her performance, an excuse for her nonperformance, a breach by Defendants, or any damages arising therefrom.

Plaintiff claims Defendants breached the following provisions of her Deed of Trust:  "If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. . . . Trustee shall give public notice of sale to the person and in the manner prescribed by Applicable Law."  RJN Ex. A ¶ 22.  That is, the lender under the Deed of Trust is required to issue, or cause the trustee to issue, a Notice of Default and a Notice of Trustee's Sale prior to a foreclosure sale in accordance with California law.  Here, the judicially noticed documents establish that both of these notices were issued by the duly appointed trustee as required by the Deed of Trust prior to the foreclosure sale.  Specifically, the First Assignment, recorded on November 16, 2011, transferred the beneficial interest in the Deed of Trust to Aurora.  RJN Ex. B.  On November 18, 2011, Aurora, as beneficiary, substituted The Wolf Firm as trustee under the Deed of Trust.  RJN Ex. C; Compl. ¶ 12.  Accordingly, the Notice of Default (RJN Ex. D) and Notice of Trustee's Sale (RJN Ex. E) were properly recorded by the duly appointed prior to the

---

[1] Plaintiff also asserts the bare legal conclusion that Defendants breached paragraph 24 of the Deed of Trust, providing for the appointment of successor trustees, but fails to plead how Defendants breached this provision or any other facts.  Accordingly, Plaintiff has failed to allege facts support a claim that Defendants violated paragraph 24 of the Deed of Trust.

1   trustee's sale on September 27, 2012.  Accordingly, Plaintiff has failed to allege a breach of the

2   Deed of Trust by Defendants.

3           Moreover, Plaintiff agreed when she signed the Deed of Trust that that she would not

4   commence any judicial action

5                   that alleges that the other party has breached any provision of, or
                    any duty owed by reason of, this Security Instrument, until such
6                   Borrower or Lender has notified the other party (with such notice
                    given in compliance with the requirements of Section 15) of such
7                   alleged breach and afforded the other party hereto a reasonable
                    period after the giving of such notice to take corrective action.

8

9   RJN Ex. A ¶ 20.  Section 15 of the Deed of Trust requires all such notices to be in writing and sent

10  by first-class mail.  *Id.* ¶ 15.  Plaintiff did not provide notice to Aurora and an opportunity to cure

11  the alleged "breach," nor does she allege that she did so.  Moreover, it is undisputed that  Plaintiff

12  has  breached ***her*** obligations under the Deed of Trust, not Defendants.  As she has alleged no

13  excuse for the nonperformance of her obligations, including the making of timely payments,

14  Plaintiff cannot maintain a breach of contract cause of action.

15          Finally, Plaintiff has failed to allege any damages arising from the unsupported allegation

16  of  "breach" of the Deed of Trust by Defendants.  Plaintiff sets forth the following damages

17  theory:

18                  Plaintiffs [sic] sustained pecuniary damages a result of Defendants'
                    breach of Plaintiffs' [sic] Deed of Trust and the wrongful sale of
19                  Plaintiffs' [sic] Deed of Trust to the securitized trust because the
                    false recorded documents disclose a claim of right, title or interest in
20                  the subject property which gives rise to a need for policy
                    endorsements for title insurance, settlement of a claim shown on a
21                  title report, and/or a significant dissuasive factor for any prospective
                    purchase inspecting the property for sale, and/or its disclosures, any
22                  and all of which factors negatively affected and continue to affect
                    the purchase price and vendibility of the Subject Property in an
23                  amount to be proven at trial.

24  Compl. ¶ 25.  That is, Plaintiff claims that some improper transfer in the history of her loan has

25  caused her to suffer the damages that may more fairly be attributed to her default, as a matter of

26  proximate causation.  A change in ownership of the loan in did not change Plaintiff's obligations

27  under the Deed of Trust, nor does Plaintiff allege that she would not have defaulted if Aurora or

28  Nationstar was not assigned the beneficial interest in the Deed of Trust.  *See Fontenot v. Wells*

1    *Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272 (Cal. Ct. App. 2011) ("As to plaintiff, an assignment

2    merely substituted one creditor for another, without changing her obligations under the note.")

3    Further, "Plaintiff does not allege specific facts to support [her] bare assertion that the Property's

4    vendibility was impaired."  *Ogilvie v. Select Portfolio Servicing*, No. 12-CV-001654-DMR, 2012

5    WL 3010986, at * (N.D. Cal. July 23, 2012).  Even if the property's vendibility has been impaired,

6    again Plaintiff has failed to attribute that "damage" to any "breach" by Defendants beyond any

7    conclusory allegation.  *See Fontenot*, 198 Cal.App.4th at 272 ("Plaintiff effectively concedes she

8    was in default, and she does not allege that the transfer to HSBC interfered in any manner with her

9    payment of the note . . . , nor that the original lender would have refrained from foreclosure under

10   the circumstances presented.  If MERS indeed lacked authority to make the assignment, the true

11   victim was not plaintiff but the original lender.").  Accordingly, Plaintiff cannot allege that any

12   damage she has allegedly sustained was caused by Defendants.

13   **B.      Securitization of the Underlying Note is Irrelevant**

14         Plaintiff further argues that Defendants breached the Deed of Trust because the underlying

15   note was securitized, and that Defendants are therefore not the "true beneficiary" with authority to

16   execute, or cause the trustee to execute, the Notice of Default and Notice of Sale  Compl. ¶¶ 21-

17   22.  Specifically, Plaintiff claims that because her note was securitized and allegedly sold to a trust

18   pool in 2007, only the "true beneficiaries, the certificate holders of the securitized trust" had

19   authority to execute the notices.  Compl. ¶ 21.  That is, neither Aurora nor Nationstar was the "true

20   beneficiary" under the Deed of Trust because the underlying note was securitized.

21         First, nothing in California's comprehensive statutory scheme or in the Deed of Trust

22   prohibits securitization of an underlying promissory note.  In fact, the Deed of Trust signed by

23   Plaintiff explicitly provides that "[t]he Note or a partial interest in the Note (together with this

24   Security Instrument) can be sold one or more time without prior notice to the Borrower."  RJN Ex.

25   B ¶ 20; *see also* Cal. Civ. Code § 2934 ("[A]ny assignment of the beneficial interest under a deed

26   of trust **may** be recorded, . . .") (emphasis added).  This makes sense because a change in

27   ownership of the loan in no way changes a borrower's obligations.  *See Fontenot*, 198 Cal.App.4th

28   at 272.  In contrast, the Deed of Trust provides that borrowers are provided written notice if there

DEFENDANTS' MOTION TO DISMISS AND EXPUNGE LIS PENDENS

1   is a change in the loan servicer because borrowers need to know where to send their payments in

2   order to perform their obligations under the note and the deed of trust.  RJN Ex. B ¶ 20.

3   　　　Second, "[t]heories that securitization undermines the lender's right to foreclose on a

4   property have been rejected by the courts."  *McGough v. Wells Fargo Bank, N.A.*, No. C12-0050

5   THE, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012) (citing *Sami v. Wells Fargo Bank, et al.*,

6   No. 12-00108, 2012 WL 967051, at *4-*6 (N.D. Cal. Mar. 21, 2010) (rejecting arguments that

7   securitization invalidates standing to foreclose); *Reyes v. GMAC Mortg. LLC*, No. 11-0100, 2011

8   WL 1322775, at *2 (D.Nev. Apr. 5, 2011) ("[S]ecuritization of a loan does not in fact alter or

9   affect the legal beneficiary's standing to enforce the deed of trust."); *Wadhwa v. Aurora Loan*

10  *Servs., LLC*, No. 11-1784, 2011 WL 2681483, at *4 (E.D. Cal. July 8, 2011) (rejecting argument

11  that securitization, and assignment of the note to a REMIC invalidates interests other than the

12  borrower's); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010)

13  ("There is no stated requirement in California's nonjudicial foreclosure scheme that requires a

14  beneficial interest in the Note to foreclose."); *Benham v. Aurora Loan Servs.*, No. 09-2059, 2009

15  WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (rejecting argument that defendants' power of sale is

16  lost by assignment of original promissory note to a trust pool); *Hafiz v. Greepoint Mortg. Funding,*

17  *Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009) (rejecting same argument regarding trust pool)).

18  "Clearly, proper securitization does not give rise to a cause of action in California, and the party

19  initiating the non-judicial foreclosure proceedings need not be in possession of the promissory

20  note."  *McGough*, 2012 WL 2277931, at *4.  The securitization of Plaintiff's note in no way

21  affected the legal beneficiary's powers under the Deed of Trust.  In fact, *McGough* explicitly

22  rejected this exact theory that securitization somehow constitutes a breach of a deed of trust.  *Id.*,

23  at *5 ("[T]he complaint seeks to allege breach of contract by claiming that securitization

24  constituted an improper transfer of the note separate from its security instruments.  However, . . .

25  as discussed above, securitization is not a valid basis for bringing this cause of action.").

26  Accordingly, Plaintiffs' breach of contract claim fails as a matter of law.

27  　　　Third, even accepting Plaintiffs' faulty premise that the securitization of the underlying

28  note rendered the trust pool the "true beneficiary" under the Deed of Trust (which it did not), in

8

1    2007, MERS still had authority as the nominee of American Brokers Conduit's *successors and*

2    *assigns* to execute the First Assignment and assign the beneficial interest to Aurora. Plaintiff

3    agreed when she signed the Deed of Trust that MERS would serve as the beneficiary "as a

4    nominee for Lender and Lender's successors and assigns." RJN Ex. B p. 2. She further confirmed

5    that "Borrower understands and agrees that MERS holds only legal title to the interests granted by

6    Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as

7    nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of

8    those interests, including, but not limited to, the right to foreclose and sell the Property . . . ." RJN

9    Ex. B p. 3. In other words, if American Brokers Conduit later transferred the Deed of Trust to a

10   "successor" or "assign," MERS would remain the beneficiary with all the attendant powers,

11   including the right to execute the First Assignment on the new beneficiary's behalf and assign the

12   beneficial interest to Aurora. California courts agree that "[i]t is now widely-recognized that

13   MERS may properly act as a beneficiary under a deed of trust. *Gomes v. Countrywide Home*

14   *Loans, Inc.*, 192 Cal.App.4th 1149, 1151 (Cal. Ct. App. 2011) (citing *Mortg. Elec. Registration*

15   *Sys. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784, 785 (Neb. 2005)); *see also Pedersen v.*

16   *Greenpoint Mortg. Funding, Inc.*, ---F.Supp.2d---, CIV No. 2-11-0642 KJM EFB, 2012 WL

17   4510854, at *10 (E.D. Cal. Sept. 30, 2012) ("This court has rejected claims attacking MERS'

18   ability to assign and substitute."). Accordingly, this claim fails even under Plaintiff's faulty "true

19   beneficiary" theory, and should be dismissed with prejudice.

20   **C.      Plaintiff Does Not Have Standing to Assert a Breach of the Pooling and Servicing
             Agreement.**

21

22        Plaintiff also asserts that Defendants breached the Pooling and Service Agreement ("PSA")

23   governing the securitized trust pool that allegedly owns Plaintiff's note. Yet Plaintiff does not

24   allege that she is a either a party to or a third-party beneficiary of the PSA. As such, Courts have

25   repeatedly rejected any claim premised upon this theory. "Indeed, where a plaintiff is not an

26   investor in the PSA, courts have held that the plaintiff has no standing to challenge violations of

27   the PSA's terms." *McGough*, 2012 WL 2277931, at *4 (citing *In re Correia*, 452 B.R. 319, 324

28   (1st Cir. 2012) (holding that debtors, as non-parties to the PSA, lack standing to challenge

**DEFENDANTS' MOTION TO DISMISS AND EXPUNGE LIS PENDENS**

mortgage agreement where challenge is based on non-compliance with a PSA); *Bascos v. Fed Home Loan Mortg. Corp.*, No. 11-3968, 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011) ("[Plaintiff] has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."); *Junger v. Bank of Am.*, No. 11-10419, 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012) (finding that the fact that plaintiff was not a party to the PSA undermined any standing plaintiff might have to challenge the PSA); *Sami*, 2012 WL 9607051, at *6 (finding no standing to challenge the PSA where plaintiff alleged defendant's enforceable rights to the property were abrogated by improper securitization)); *see also Aniel v. GMAC Mortg., LLC* No. C 12-04201 SBA, 2012 WL 5389706, at *5 (N.D. Cal. Nov. 2, 2010) ("[T]o the extent Plaintiffs argue that GMAC is the wrong entity foreclosing on the Property on the theory that Defendants allegedly failed to comply with the terms of [the PSA], they have filed to demonstrate that they have standing to do so.  Plaintiffs do not argue, let alone show, that they are parties to, or third party beneficiaries of, these agreements.  Thus, Plaintiffs have not demonstrated that they have standing to challenge the assignment of the deed of trust based on non-compliance with these terms of [the PSA].") (citing *Ganesan v. GMAC Mortg., LLC*, 2012 WL 4901440, at *4 (N.D. Cal. Oct. 15, 2012) (citing cases and dismissing similar complaint without leave to amend)). The law could not be more clear: any claim premised upon the PSA should be dismissed with prejudice.

## VI.   PLAINTIFF'S SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED AGREEMENTS FAILS AS A MATTER OF LAW

Plaintiffs' second cause of action for "breach of implied agreements" is redundant of the first cause of action and should be dismissed for the same reasons that claim is not viable: Plaintiff has failed to establish a breach of the Deed of Trust by Defendants, and Plaintiff does not have standing to assert a breach of the PSA.  Moreover, California law does not permit a party to assert breach of implied contract where an express contract exists.  *Shvarts v. Budget Grp., Inc.*, 81 Cal.App.4th 1153, 1160 (Cal. Ct. App. 2000) ("[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."); *Lance Camper Mfg. Corp. v. Republic Indemnity*

10

*Co.*, 44 Cal.App.4th 194, 203 (Cal. Ct. App. 1996) (same).  Because amendment cannot cure this defect, this claim should be dismissed without leave to amend.

### VII. PLAINTIFF'S THIRD CAUSE OF ACTION FOR SLANDER OF TITLE FAILS

In order to state a claim for slander of title, a plaintiff must allege "(1) publication, (2) which is without privilege or justification, (3) which is false and (4) which causes direct and immediate pecuniary loss." *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal.App.4th 1040, 1051 (Cal. Ct. App. 2009).  Plaintiff claims the First Assignment, and consequently every subsequently recorded title instrument, is false.  However, Plaintiff has failed to allege that any of these recorded documents are false, nor has she alleged any damages arising out of the recorded title instruments.

### A.      California Courts Have Repeatedly Rejected Plaintiff's Frivolous Attack on MERS.

Plaintiff claims that the First Assignment, and consequently every subsequently recorded title instrument, is false because

> Defendant MERS could not make a valid assignment of the beneficial interest in Plaintiff's Deed of Trust because it is not and was not a beneficiary.  Contrary to the express language of the alleged November 16, 2011 Assignment, [sic] therefore MERS did not receive any value or consideration for Plaintiff's Note and Deed of Trust.  Thus, the Assignment of the Deed of Trust recorded on November 16, 2011, through which Defendants MERS purports to assign the beneficial interest under Plaintiff's Deed of Trust to Defendant Saxon [sic], is false and invalid because MERS did not and could not have actually "grant, assign, or transfer" any interest in Plaintiff's Deed of Trust.

Compl. ¶ 42.  However, Plaintiff agreed when she signed the Deed of Trust that "Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ."  RJN Ex. B p. 3. Further, courts have thoroughly rejected attacks on MERS' authority to act on behalf of the lender, including executing assignments.  "It is now widely-recognized that MERS may properly act as a beneficiary under a deed of trust." *Gomes*, 192 Cal.App.4th at 1151 (citing *Mortg. Elec. Registration Sys. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d at 785); *see also Pedersen*, 2012

1   WL 4510854, at *10 ("This court has rejected claims attacking MERS' ability to assign and

2   substitute."); *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal.App.4th 1495, 1498 (Cal. Ct. App.

3   2012) ("MERS, as nominal beneficiary, has the power to assign its interest under a deed of

4   trust.").  MERS therefore had  authority as a beneficiary and nominee of lender to execute the First

5   Assignment, and Plaintiff has failed to allege that the First Assignment is false.

6   **B.      Plaintiff's Speculation Regarding the Employment of the Signatory Will Not Serve to
7            Invalidate the First Assignment.**

8         Plaintiff argues that the First Assignment is false "because it was signed by Stacy Sandoz,

9   allegedly as Vice President of MERS.  However, Plaintiff alleges that Stacy Sandoz is a robo-

10  signer who signs property records without the requisite legal or corporate authority to sign on

11  behalf of Defendant MERS.  Stacy Sandoz is actually an employee of Defendant Aurora."

12  (Compl. ¶ 43.)  This argument fails on its face.

13        A bare allegation that the signatory of an assignment is not an authorized agent of the

14  entity on whose behalf it executes the assignment is insufficient to invalidate an assignment.  *See*

15  *Deerink v. Bank of NY Mellon, N.A.*, No. 2:11-cv-01735-MCE-EFC, 2012 WL 3234027, at *6

16  (E.D. Cal. Aug. 6, 2012) (granting motion to dismiss because "Plaintiffs offer no facts or other

17  evidence to support their allegation that [the signatory] misrepresented herself in signing the

18  Assignment.").  Just as a bare allegation of agency constitutes a legal conclusion insufficient to

19  state a claim (*see Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 685 (9th Cir. 2009)), so too does a

20  bare allegation of non-agency.  Even taking as true the allegation that Ms. Sandoz is an employee

21  of Aurora, Plaintiff can point to no legal authority requiring an individual signing on an entity's

22  behalf to be an employee of that entity.  Plaintiff's theory appears to be that because Ms. Sandoz is

23  employed by Aurora, she could not have also held a position or had signature authority for

24  MERS.[2]  That plainly erroneous argument has been rejected by  numerous federal courts.  *See,*

25  _____

26  [2] MERS' system in this regard has recently been examined in great detail:

27         Upon request by a member, MERS furnishes a formal corporate resolution designating one
           or more of the member's employees, chosen by the member, as "certifying officers" of
28  (footnote continued)

1    *e.g.*, *Bogosian v. CR Title Servs., Inc.*, No. 5:11-cv-02043 EJD, 2011 WL 2039368, at *1 (N.D.

2    Cal. May 18, 2011) ("[T]o the extent that Plaintiffs take issue with [the signatory's] dual position,

3    Plaintiffs have not identified relevant legal authority prohibiting such an arrangement."); *Chua v.*

4    *IB Prop. Holdings, LLC*, No. CV 11-05894 DDP (SPx), 2011 WL 3322884, at *2 (C.D. Cal. Aug.

5    1, 2011) (rejecting argument that assignment was invalid because "Plaintiffs have not identified a

6    relevant legal authority prohibiting one individual from working for both [the loan servicer] and

7    MERS or from acting as an agent for both.").  Indeed, numerous courts have held that the

8    employee of a loan servicer or other entity may hold a position with and sign documents on behalf

9    of MERS.  *See*, *e.g.*, *Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11-cv-00062, 2012 WL

10   204288, at *5 n. 7 (W.D. Va. Jan. 24, 2012) (rejecting plaintiff's argument that assignment was

11   invalid because it was executed by loan servicer employee as an "assistant secretary" of MERS);

12   *Aliberti v. GMAC Mortg., LLC*, 779 F.Supp.2d 242, 249 (D. Mass. 2011) (upholding assignment

13   executed by "vice president" of MERS who was employed by the entity to which MERS's rights

14   were assigned); *Culhane*, 826 F.Supp.2d at 373-74 (rejecting plaintiff's argument that assignment

15   was invalid because it was executed by loan servicer acting as "vice president" of MERS); *James*

16   *v. ReconTrust Co.*, No. 11-CV-324, 2011 WL 3841558, at *12 (D. Or. Aug. 26, 2011) (finding

17   that signatory of an assignment from MERS to loan servicer could wear both hats and that doing

18   so was "insufficient to prove that she lacked authority to sign" the assignment).

19          Here, Plaintiff seeks to unwind a valid foreclosure by reaching back into the history of the

20   Deed of Trust and grasping for what she perceives to be a technical defect.  As discussed, she has

21   failed to find one.  Plaintiff's implausible and conclusory allegation that Ms. Sandoz did not have

22   _____

23          MERS.  That is, MERS authorizes employees of the note holder or, more commonly, the
            note holder's servicing agent to execute assignments on MERS's behalf.  These employees

24          are deputized at their own election as either "vice presidents" or "assistant secretaries" of

25          MERS, and the actions that they may take as MERS's agents are enumerated in the
            corporate resolution.

26

27   *Culhane v. Aurora Loan Servs. of Neb.*, 826 F.Supp.2d 352, 373-74 (D.Mass. 2011) (rejecting
     argument that assignment was invalid because it was executed by employee of loan servicer acting

28   as a "vice president" of MERS).

1   authority to execute the First Assignment cannot support the "falsity" element of a slander of title

2   claim.

3   **C.      Plaintiff Fails to Allege Damage Arising Out of the Recording of the Allegedly False Title Instruments.**

4

5         Here, as in *Mena v. JP Morgan Chase Bank, N.A.*, No. 12-1257 PSG, 2012 WL 3987475

6   (N.D. Cal. Sept. 7, 2012),

7             The monetary harm pled in the Complaint is based on the alleged
              "impair[ment] of vendibility" to the Property, as well as Plaintiffs'
8             need to retain attorneys and file suit in order "to cancel the
              instruments casting doubt on Plaintiff's title."  This harm is
9             insufficient in a claim for slander of title because "fees incurred to
              quiet title are recoverable and fees incurred prosecuting the slander
10            of title are not."

11   *Id.* at *4 (internal footnotes omitted) (quoting *Ogilvie v. Select Portfolio Servicing*, No. 12-CV-

12   001654-DMR, 2012 WL 3010986, at *4 (N.D. Cal. July 23, 20120)); *see also id.* ("Plaintiff also

13   fails to plead sufficiently that Defendants caused direct and immediate pecuniary harm.  First,

14   Plaintiff does not allege specific facts to support his bare assertion that the Property's vendibility

15   was impaired."); *Ryan v. Editions Ltd. W., Inc.*, No. C-06-4812-PVT, 2007 WL 4577867, at *3

16   (N.D. Cal. Dec. 27, 2007) (holding that fees incurred prosecuting a slander of title are not

17   recoverable).  That is, both the *Mena* and *Ogilvie* Courts rejected the exact allegations of damages

18   found in this complaint.  Accordingly, Plaintiff has failed to allege damages arising out of any

19   "slander" to her title, and this claim should be dismissed.

20   **VIII.   PLAINTIFF HAS NO SECTION 2923.5 CLAIM POST-FORECLOSURE**

21         Plaintiff alleges that Defendants violated California Civil Code section 2923.5 by failing to

22   contact her at least thirty days prior to recording the Notice of Default.  (Compl. ¶ 58.)  Plaintiff

23   also disputes the truth of the declaration averring compliance with section 2923.5 that is attached

24   to the Notice of Default.  (*Id.*)  However, the courts have made clear that "Civil Code section

25   2923.5 does not provide relief after a sale takes place."  *Stebley*, 202 Cal.App.4th at 526; *see also*

26   *Skov v. U.S. Bank Nat'l Ass'n*, 207 Cal.App.4th 690, 698 (Cal. Ct. App. 2012) ("The only remedy

27   for noncompliance with [section 2923.5] is the postponement of the foreclosure sale.") (citing

28   *Mabry v. Superior Court*, 185 Cal.App.4th 208, 214 (Cal. Ct. App. 2010)).  As the property has

DEFENDANTS' MOTION TO DISMISS AND EXPUNGE LIS PENDENS

1   already been sold at a trustee's sale, section 2923.5 provides Plaintiff no relief, and the fourth

2   cause of action should be dismissed with prejudice.

3   **IX.   PLAINTIFF PRESENTS NO VIABLE WRONGFUL FORECLOSURE THEORY**

4           Plaintiff's allegation that the foreclosure of the property was wrongful rests primarily on

5   her argument that the First Assignment was invalid, and that the subsequent Notice of Default,

6   Notice of Sale, and Substitution Trustee were invalid for that reason.  In order to state a claim for

7   the equitable cause of action of wrongful foreclosure, a plaintiff must allege the following: (1) the

8   trustee cause an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a

9   power of sale in a deed of trust; (2) the trustor was prejudiced or harmed; and (3) the trustor

10  tendered the amount of the secured indebtedness or was excused from tendering.  *Lona v.*

11  *Citibank, N.A.*, 202 Cal.App.4th 89, 104 (Cal. Ct. App. 2011).  Plaintiff's claim fails on every

12  element.

13          First, as related at *supra* Part V.A., the judicially noticed documents establish that

14  Defendants complied with California's nonjudicial foreclosure statute, and Plaintiff has therefore

15  failed to allege any viable irregularity in the foreclosure proceedings, or any other facts implying

16  that the sale was somehow illegal, fraudulent, or willfully oppressive.  Plaintiff's argument that

17  American Brokers Conduit lacked authority to make the First Assignment because it was not the

18  "true beneficiary" following the securitization of the loan in 2007 is without merit.  As related at

19  *supra* Part V.B, securitization of an underlying note does not impair the lender's ability to exercise

20  its powers under the deed of trust.  Further, even if American Brokers Conduit was not the "true

21  beneficiary" of the time of the First Assignment, MERS had authority as the nominee of its

22  successors and assigns to assign the beneficial interest in the Deed of Trust to Aurora.  Further,

23  Plaintiff's allegations of "robo-signing" will not serve to invalidate the First Assignment, as

24  related at *supra* Part VII.B.  Moreover, the Trustee's Deed Upon Sale recites that all statutory

25  notice requirements and procedure required by law for the conduct of the foreclosure have been

26  satisfied.  RJN Ex. G.  This recital gives rise to "a rebuttable presumption . . . that the sale has

27  been conducted regularly and properly[.]"  *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 441 (Cal. Ct.

28  App. 2003) (citing Cal. Civ. Code § 2924.)  Plaintiff offers no facts rebutting the presumption of

1   compliance which arises from the Trustee's Deed Upon Sale.  This claim should be dismissed

2   with prejudice.

3          Second, Plaintiff can plead no prejudice she suffered as a result of the foreclosure.  Here,

4   as in *Ogilvie*, "Plaintiff has not adequately pled prejudice or harm.  Plaintiff alleges that [s]he was

5   prejudiced and harmed because [s]he lost h[er] home, lost the equity in h[er] home, and was forced

6   to engage counsel for this matter."  *Ogilvie*, 2012 WL 3010986, at *6; *see* Compl. ¶ 68.  However,

7   as noted by the *Ogilvie* Court upon addressing a nearly identical claim, "[p]rejudice or harm is not

8   established unless the plaintiff demonstrates 'that the foreclosure would have been averted but for

9   [the] alleged deficiencies.'"  *Id.* (quoting *Reynoso v. Paul Fin., LLC*, No. 09-3225-SC, 2009 WL

10  3833298, at *4 (N.D. Cal. Nov. 16, 2009) (changes in original)); *see also Ghuman v. Wells Fargo

11  Bank, N.A.*, No. 1:12-CV-00902-AWI-BAM, 2012 WL 2263276, at *5 (E.D. Cal. June 15, 2012)

12  ("Plaintiffs would be hard pressed to show any conceivable prejudice, given Plaintiffs have

13  offered no facts to suggest the substitution of NDEx (or the allegedly improper recording thereof)

14  adversely affected their ability to pay their debt or cure their default.").  Accordingly, because

15  "Plaintiff does not allege that foreclosure would not have occurred but for the supposed improper

16  transfer of interest[,]" *Ogilvie*, 2012 WL 3010986, at *6,  Plaintiff has failed to allege prejudice.

17         Third, the tender rule bars Plaintiff's wrongful foreclosure cause of action, as related at

18  *supra* Part IV.  Plaintiff offers the bare allegation that she "is excused from compliance with the

19  tender rule because they [sic] are challenging that Defendants lacked the legal power to foreclose

20  and requiring tender under these circumstances would be inequitable and also because the

21  Trustee's Deed is void."  Compl. ¶73.  These bare legal conclusions will not suffice to excuse

22  Plaintiff from the application of the tender rule, especially in light of the judicially noticeable

23  documents that establish a proper foreclosure.

24      **X.  PLAINTIFF PLEADS NO FACTS IN SUPPORT OF HER RICO CLAIM**

25         To state a civil RICO claim, a plaintiff must allege five elements: (1) conduct, (2) of an

26  enterprise, (3) through a pattern, (4) of racketeering activity, establishing that (5) the defendant

27  caused injury to plaintiff's business or property.  *Banh v. Bank of Am., N.A.*, No. C11-05744 HRL,

28  2012 WL 1670211, at *4 (N.D. Cal. May 14, 2012) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473

U.S. 479, 496 (1985)).  Title 18 U.S.C. § 1961(1) defines "racketeering activity" as a number of specific criminal acts under federal and state laws.  Here, although the allegations contained in the Complaint are largely inscrutable,[3] it appears that they are premised upon mail and wire fraud (*see, e.g.*, Compl. ¶ 77), and those predicate crimes must be pled with particularity.  *Banh*, 2012 WL 1670211, at *4 (citing FED. R. CIV. P. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2006)).

The allegations here are vague, conclusory, somewhat unintelligible, and largely impertinent.  As such, they do not rise to meet Rule 8(a)'s plausibility standard, let alone the heightened pleading requirement of Rule 9(b).  This Court recently rejected a nearly identical claim for this reason:

> Rather than plead specific facts about plaintiffs' loan, the complaint presents a generalized grievance about mortgage securitization and the mortgage industry; and, plaintiffs make highly generalized and conclusory assertions that defendant allegedly defrauded them (and other borrowers) by pursuing foreclosure without the authority to do so.
>
> This is not sufficient to state a plausible claim for relief.  Accordingly, this claim is dismissed.  Although the court remains skeptical whether they can allege a civil RICO claim against defendant arising out of the foreclosure of their property, plaintiffs will be given leave to amend if, consistent with Fed.R.Civ.P. 11, they believe that they truthfully can state a plausible claim for relief.  Additionally, as discussed above, if they seek to allege a claim based on fraud, plaintiffs must plead the claim with specificity as required by Fed.R.Civ.P. 9(b).

---

[3] In fact, the complaint asserts the RICO claim against "Saxon" and Freddie Mac, who are not parties to this suit, and references a damages calculation set forth in non-existent Count I.A. Compl. ¶ 94.  Other parts of this claim are largely unintelligible and impertinent.  *See, e.g.*, *id.* ¶ 97 ("The quick sale by the lender of its interest, at what appears to be a loss, would have at first seemed inexplicable, but when considered with the benefit of hindsight, proof of these quick transfers would have been evidence that the lender knew in advance that property values would soon decline.  Additionally, the securitizes/underwriters, hedged their bets beforehand with multiple collateral contracts, far in excess of their original investment, thereby banking on and benefiting on [sic] the fact that the MBS would eventually fail.  Concealed Identity [sic] by changing "servicers" on these loans, and by sending out notices of such changes drafted also in intentionally ambiguous verbiage, the bankers behind the scenes cooperated in obscuring the truth as to who had the right to receive the proceeds of the loans, and to foreclose in the event of non-payment."); *see also id.* ¶ 100 ("The conspirators intended to maintain an absolute stranglehold on the American economy for many decades, if not centuries, into the future.").

*Banh*, 2012 WL 1670211, at *4.  Because amendment is likely to prove futile, this claim should be dismissed with prejudice.

## XI.  PLAINTIFF DOES NOT HAVE STANDING TO PURSUE A UCL CLAIM, WHICH IS DERIVATIVE OF THE OTHER NON-VIABLE CAUSES OF ACTION

### A.   Plaintiff Lacks Standing to Bring a UCL Claim Because Her Default Caused Her Harm.

Plaintiff lacks standing to bring a claim pursuant to California's Unfair Competition Law, Business and Professions Code section 17200 *et seq.* (the "UCL") because Defendants did not cause her injury.  Since the passage of Proposition 64 in November 2004, a plaintiff only has standing to challenge a business practice under the UCL if she has (1) "suffered injury in fact" and (2) "has lost money or property as a result of" the unfair competition she challenges.  Cal. Bus. & Prof. Code § 17204; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227 (2006).  "The phrase 'as a result' in its plain and ordinary sense means 'caused by' and requires a showing of causal connection or reliance on the alleged [unfair competition]."  *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 855 (Cal. Ct. App. 2008).

Here, the complaint pleads no injury caused by the allegedly invalid assignments or subsequent instruments recorded against the property.  Plaintiff's default is the cause of the foreclosure of the property, and plaintiff nowhere alleges that Defendants caused her default, nor does she allege that she otherwise would have avoided foreclosure if not for "invalid" First Assignment.  Even if the First Assignment were invalid, Plaintiff has failed to explain how an invalid transfer in the ownership of her loan would change her obligations or somehow "injure" her.  "[T]here must be a causal connection between the harm suffered and the unlawful business activity.  That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1099 (Cal. Ct. App. 2007).  That is, Plaintiff cannot assert a causal connection between Defendants' conduct and her injury for the same reason she has failed to allege prejudice or harm in connection with her wrongful foreclosure claim.  *See supra* Part IX; *see also Ogilvie*, 2012 WL 3010986, at *6 (dismissing wrongful foreclosure claim because "Plaintiff does not allege that foreclosure would not have occurred but for the supposed improper transfer of interest.").  As a

matter of law, Plaintiff's default on her obligations caused the foreclosure of the property. Any alleged securitization or change in ownership of the Deed of Trust absolutely did not affect any of Plaintiff's obligations or her ability to meet them. This claim should be dismissed with prejudice.

**B.      Plaintiff Has Failed to Allege Sufficient Facts to State a UCL Claim.**

Defendants agree with Plaintiff's assertion that her claim arising out of "[s]ection 17200 is a derivative cause of action and a Plaintiff's ability to pursue this cause of action depends on the success or failure of his or her substantive causes of action." Compl. ¶ 109. Specifically, Plaintiff bases her section 17200 claim on the faulty argument that the First Assignment, and therefore every subsequently recorded title instrument, is invalid. *See id.* ¶¶ 110-11. Accordingly, this claim fails with the rest of Plaintiff's claims because the First Assignment was valid.

**C.      The UCL Does Not Provide for Monetary Damages.**

Further, Plaintiff is not entitled to the money damages she seeks in connection with her UCL claim. *See id.* ¶ 113. Section 17203, which addresses relief available under the UCL, provides for relief only in the form of an injunction or other court order. Cal. Bus. & Prof. Code, § 17203. Thus, "[i]n a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950 (2002) (quoting *Cell-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527 (Cal. 1999)).

**XII.  THE LIS PENDENS SHOULD BE EXPUNGED IN LIGHT OF PLAINTIFF'S FAILURE TO ESTABLISH PROBABLE VALIDITY OF A REAL PROPERTY CLAIM**

A Lis Pendens must be based on an action that asserts a "real property claim." Cal. Code Civ. Proc. §§ 405.20, 405.31; *see also Amalgamated Bank v. Superior Court*, 149 Cal.App.4th 1003, 1011 (Cal. Ct. App. 2007) ("A party who asserts a claim to real property can record a notice of Lis Pendens, which serves as notice to prospective purchasers, encumbrancers and transferees that there is litigation pending that affects the property.") (citation omitted). A "real property claim" is an action that affects (a) title to, or the right to possession of, specific real property, or (b) use of an easement identified in the pleading, other than a public utility easement. A Lis Pendens "acts as a cloud against the property, effectively preventing sale or encumbrance until the

1   litigation is resolved or the Lis Pendens is expunged." *Amalgamated Bank*, 149 Cal.App.4th at

2   1011.

3         The California Supreme Court has noted that, due to the relative ease with which a plaintiff

4   can record a Lis Pendens, this procedure is subject to abuse. *Id.*; *see also Malcom v. Superior

5   Court*, 29 Cal.3d 518, 523-24 (1981).  Accordingly, the California legislature revised the

6   applicable code section in 1992 to allow Courts to expunge improperly-recorded notices of Lis

7   Pendens.  Under the revised law, a person who has an interest in real property against which a Lis

8   Pendens was recorded may bring a motion to expunge.  The motion must be granted unless the

9   recording party establishes "that he is likely to prevail on the merits, in much the same fashion as

10  one seeking an attachment must show the probable merit of the underlying lawsuit."

11  *Amalgamated Bank*, 149 Cal.App.4th at 1012 (citing Cal. Code Civ. Proc. §§ 481.190,

12  484.090(a)(2)).  The party claiming a right to maintain the Lis Pendens has the burden of

13  establishing the existence of a real property claim and the probably validity of that claim by a

14  preponderance of the evidence.  Cal. Code Civ. Proc. § 405.32.

15        In the present case, Plaintiff fails to establish any "real property claim" against Defendants,

16  much less a likelihood of success on the merits.  The majority of Plaintiff's causes of action assert

17  statutory or common law violations and seek monetary relief.  Further, Plaintiff has failed to

18  adequately allege a slander of title or wrongful foreclosure claim, and will not be able to do so

19  until she offers a complete tender of the full outstanding obligation on her loan.  As such, Plaintiff

20  has not proven "it is more likely than not that the plaintiff will obtain a judgment against the

21  defendant" on any real property claim.  Cal. Code Civ. Proc. § 481.190.  Defendants therefore

22  respectfully request this Court to expunge the Notice of Pendency of Action (Lis Pendens) that

23  was recorded in the Santa Clara County Recorder's Office as Document Number 22009622 on

24  December 18, 2012.

25

26

27

28

20

# XIII.  CONCLUSION

Defendants respectfully submit that the complaint should be dismissed with prejudice and the Lis Pendens expunged for the foregoing reasons.

DATED:  February 11, 2013

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:       */s/ Laura R. Jacobsen*
           Mary Kate Sullivan
           Laura R. Jacobsen

Attorneys for Defendants Aurora Bank, FSB; Nationstar Mortgage Holdings, Inc.; Nationstar Mortgage, LLC; Mortgage Electronic Registration Systems, Inc.