United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

GALE SIMMONS,

Plaintiff,

v.

AURORA BANK FSB; AURORA LOAN
SERVICES, LLC; NATIONSTAR
MORTGAGE; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; WOLF LAW FIRM, A
LAW CORP.; DOES 1-100,

Defendants.

Case No.  5:13-cv-00482-HRL

**ORDER GRANTING DEFENDANTS'
MOTIONS TO STRIKE, TO DISMISS
AMENDED COMPLAINT, AND TO
EXPUNGE LIS PENDENS**

Re: Dkt. Nos. 30, 32

Plaintiff Gale Simmons sues for alleged violations of state and federal law in connection with the foreclosure on her home loan.  The overall theme of this lawsuit is that due to alleged irregularities in the securitization of plaintiff's loan, defendants are not the proper beneficiaries of the securitized trust and therefore had no authority to foreclose or to enforce any rights or interests in the subject property.

According to plaintiff's amended complaint (FAC), the currently operative pleading, in February 2007 plaintiff entered into a Deed of Trust (DOT) in connection with a loan for $564,800 secured by her home at 248 Bangor Avenue, San Jose, California.  (FAC ¶¶ 2, 12 and appended

DOT; Defendants' Request for Judicial Notice (RJN), Ex. A).[1]  The DOT identified American Brokers Conduit (ABC) as the lender and Fidelity National Title Company as trustee.  (DOT at 1-2).  MERS is identified as the nominee for ABC and ABC's successors and assigns.  (Id. at 2).

Plaintiff alleges that on or about May 31, 2007, ABC securitized her loan and transferred its beneficial interest in the DOT to the Lehman XS Trust Mortgage Pass-Through Certificates Series 2007-7N (Lehman XS Trust).  (FAC ¶ 13).  On November 16, 2011, MERS recorded an assignment of the DOT transferring beneficial interest in the DOT from ABC to defendant Aurora Loan Services, LLC (ALS) as trustee of the Lehman XS Trust.  (FAC ¶ 14; RJN Ex. B).  Plaintiff claims that the assignment was made too late in violation of the pooling service agreement (PSA) governing the Lehman XS Trust.  (Id.).

The FAC further alleges that on November 28, 2011, defendant Aurora Bank FSB, as ALS's agent, recorded a Substitution of Trustee, substituting the Wolf Law Firm (Wolf) in place of the original trustee, Fidelity National Title Company.  (FAC ¶ 17; RJN, Ex. C).  On that same date, a Notice of Default and Election to Sell Under Deed of Trust (NOD) was recorded, stating that plaintiff owed $17,533.97 as of November 23, 2011.  (FAC ¶ 18; RJN, Ex. D).  The NOD was executed by Wolf as trustee.  And, on March 1, 2012, a Notice of Trustee's Sale (NOTS) was recorded by Wolf.  (FAC ¶ 19; RJN, Ex. E).

According to the FAC, on October 9, 2012, an Assignment of the Deed of Trust was recorded by Aurora Bank, transferring the beneficial interest in the DOT to Nationstar Mortgage, LLC (Nationstar).  (FAC ¶ 20; RJN Ex. F).  Also on October 9, 2012, Wolf recorded a Trustee's Deed Upon Sale, stating that Nationstar, being the highest bidder, had purchased the subject property.  (RJN, Ex. G).

On December 10, 2012, plaintiff filed her complaint in Santa Clara County Superior Court, asserting the following seven claims for relief: (1) breach of contract; (2) breach of implied

---

[1] Defendants request that the court take judicial notice of foreclosure-related documents recorded in the Santa Clara County Recorder's Office.  The authenticity of the foreclosure-related documents is not in dispute and may be verified by resort to the public record.  Accordingly, defendants' request for judicial notice is granted, but the court will not rely on facts contained in those documents that reasonably may be subject to dispute.  Fed. R. Evid. 201.

United States District Court
Northern District of California

United States District Court
Northern District of California

agreements; (3) slander of title; (4) violation of California Civil Code § 2923.5; (5) wrongful foreclosure; (6) RICO violations, 18 U.S.C. § 1962; and (7) violation of California Business and Professions Code § 17200.  Defendants removed the matter here, asserting federal question and diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.

This court previously granted defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint on the ground that plaintiff failed to tender the outstanding amount on the loan and for failure to state a claim for relief.  The claims for alleged violation of California Civil Code § 2923.5 and RICO, 18 U.S.C. § 1962 were dismissed without leave to amend.  Plaintiff was given leave to amend her other claims.  And, in its order, the court stated that leave to amend was limited to those claims pled in the complaint and consistent with the court's rulings.  To the extent plaintiff wished to assert new or different claims for relief or add new parties, the court directed plaintiff to make an appropriate application pursuant to Fed. R. Civ. P. 15.  Because plaintiff was given leave to amend, the court denied without prejudice defendants' motion to expunge lis pendens.

Plaintiff filed a first amended complaint (FAC) re-asserting her claims for (1) breach of contract; (2) breach of implied agreements; (3) slander of title; (4) wrongful foreclosure; and (5) violation of California Business and Professions Code § 17200.  Without making a motion under Fed. R. Civ. P. 15, and in direct contravention of this court's order, the FAC also adds new parties ALS and Wolf, as well as the following three new claims for relief:   Claim 6, violation of the Truth in Lending Act (TILA) 15 U.S.C. § 1601 (FAC ¶ 62-69); Claim 7, violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605 (FAC ¶ 70-79); and Claim 8, violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (FAC ¶ 80-87).  Additionally, in the prayer for relief, the FAC now also requests "statutory damages."  (FAC at p. 23:16).

The previously named and served defendants move to dismiss the FAC on the grounds that plaintiff has not alleged tender and still fails to allege sufficient facts stating a claim for relief.  Defendants also move to strike the newly added claims and parties because plaintiff violated Fed. R. Civ. P. 15 and this court's prior order.  Defendants also renew their motion to expunge lis

1    pendens.  Plaintiff opposes the motions.[2]

2         Newly added defendant ALS subsequently filed a joinder in defendants' motions to strike,

3    to dismiss, and to expunge lis pendens.

4         Defendants' pending motions to dismiss and to expunge lis pendens were deemed

5    submitted without oral argument.  Civ. L.R. 7-1(b).  Upon consideration of the moving and

6    responding papers, this court grants defendants' motion to strike, grants the motion to dismiss

7    without leave to amend, and grants the motion to expunge lis pendens.[3]

8                              **DISCUSSION**

9    **I.    DEFENDANTS' MOTION TO STRIKE**

10        Defendants move to strike the new claims and new parties on the ground that plaintiff

11   added them to this lawsuit in violation of this court's order on defendants' prior motion to dismiss.

12   Plaintiff offers no argument in response to this portion of defendants' motion.

13        "Only an amended complaint that is properly filed pursuant to the requirements of Rule 15

14   requirements can supersede the original."  Taa v. Chase Home Finance, LLC, No. 5:11-cv-00554-

15   EJD, 2012 WL 507430 at *1 (N.D. Cal., Feb. 15, 2012) (citing Murray v. Archambo, 132 F.3d

16   609, 612 (10th Cir.1998).  "An amendment that has been filed or served without leave of court or

17   consent of the defendants is without legal effect.  Id.  "'On occasion, a party's failure to comply

18   with the requirements of Rule 15(a) will prompt courts to strike amended pleadings—or to ignore

19   them outright.'"  Id. (quoting Sapiro v. Encompass Ins., 221 F.R.D. 513, 517 (N.D.Cal. 2004)).

20        "California district courts have occasionally considered new claims submitted in an

21   amended complaint where the prior order of dismissal granted leave to amend without limitation."

---

[2] In her opposition papers, plaintiff argues that she properly has pled a claim for relief under Cal. Civ. Code § 2923.5.  As discussed above, however, that claim was dismissed without leave to amend, and no such claim appears in the FAC.

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636; Fed. R. Civ. P. 73. Wolf Law Firm has never appeared in this action, and there is no indication that it was served.  Unserved defendants are not deemed to be "parties" to an action within the rules requiring consent to magistrate judge jurisdiction.  Neals v. Norwood, 59 F.3d 530, 532 (5th Cir. 1995); Merino v. Saxon Mortgage, Inc., No. C10-05584, 2011 WL 794988 at *1, n. 1 (N.D.Cal., Mar. 1, 2011) (Laporte, J.).

1    DeLeon v. Wells Fargo Bank, N.A., No. 10-cv-01390-LHK, 2010 WL 4285006 at *3 (N.D. Cal.,

2    Oct. 22, 2010).  "In cases like this one, however, where leave to amend is given to cure

3    deficiencies in certain specified claims, courts have agreed that new claims alleged for the first

4    time in the amended pleading should be dismissed or stricken."  Id. (citing cases).

5         As discussed, the court's prior order granting defendants' motion to dismiss gave plaintiff

6    leave to amend only as to certain claims.  (Dkt. No. 26).  Plaintiff specifically was directed to seek

7    leave of court before adding new claims or new parties.  She did not do so and offers no

8    explanation why.  Defendants' motion to strike therefore is granted.  For the reasons discussed

9    below, this court finds that plaintiff's newly added claims should be dismissed in any event.

## II.    MOTION TO DISMISS

### A.    Legal Standard

12        A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests

13   the legal sufficiency of the claims in the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir.

14   2001).  Dismissal is appropriate where there is no cognizable legal theory or an absence of

15   sufficient facts alleged to support a cognizable legal theory.  Id. (citing Balistreri v. Pacifica Police

16   Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the

17   complaint must be taken as true and construed in the light most favorable to the claimant.  Id.

18   However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

19   statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Moreover, "the court

20   is not required to accept legal conclusions cast in the form of factual allegations if those

21   conclusions cannot reasonably be drawn from the facts alleged."  Clegg v. Cult Awareness

22   Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

23        Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

24   claim showing that the pleader is entitled to relief."  This means that the "[f]actual allegations

25   must be enough to raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

26   Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted)

27   However, only plausible claims for relief will survive a motion to dismiss.  Iqbal, 129 S.Ct. at

28   1950.  A claim is plausible if its factual content permits the court to draw a reasonable inference

United States District Court
Northern District of California

5

that the defendant is liable for the alleged misconduct.  Id.  A plaintiff does not have to provide

detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice

may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion.  See

Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990);

MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a

claim without leave to amend if amendment would be futile.  Rivera v. BAC Home Loans

Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386,

393 (9th Cir. 1996)).

### B.     The Tender Rule

This court previously dismissed plaintiff's complaint because she did not plead tender of

all amounts due and owing under the loan and because the complaint contained only a conclusory

allegation that tender should be excused.  (Dkt. 26).  In her FAC (¶ 23), plaintiff now asserts that

she should be excused from the tender requirement, as a matter of equity, because in Glaski v.

Bank of America, the California Court of Appeal concluded that "[t]ender is not required where

the foreclosure sale is void, rather than voidable, such as when a plaintiff proves that the entity

lacked the authority to foreclose on the property." 218 Cal. App.4th 1079, 1100 (2013).  As

discussed above, plaintiff contends that the foreclosure on the subject property is void due to

irregularities in the securitization of her loan.  Defendants maintain that the tender rule still bars

this suit.

Under California law, "[a] full tender must be made to set aside a foreclosure sale, based

on equitable principles."  Stebley v. Litton Loan Servicing, LLP, 202 Cal. App.4th 522, 526, 134

Cal. Rptr.3d 604 (2011); see also Abdallah v. United Savings Bank, 43 Cal. App.4th 1101, 1109,

51 Cal. Rptr.2d 286 (1996) ("[A]ppellants are required to allege tender of the amount of United's

secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure,

and they have failed to do so.") (citations omitted).  "'The rationale behind the rules is that if [the

1    borrower] could not have redeemed the property had the sale procedures been proper, any

2    irregularities in the sale did not result in damages to the [borrower].'" Farah v. Wells Fargo Home

3    Mortgage, No. 5:13-cv-01127 PSG, 2014 WL 261562 at * 2 (N.D. Cal., Jan. 23, 2014) (quoting

4    Lona v. Citibank, N.A., 202 Cal. App.4th 89, 112 (2011)).

5         There are exceptions to the tender requirement, and tender need not be made (1) where

6    "the borrower's action attacks the validity of the underlying debt"; (2) "when the person who

7    seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary"; (3)

8    "where it would be inequitable to impose such a condition on the party challenging the sale"; and

9    (4) "when the trustor is not required to rely on equity to attack the deed because the trustee's deed

10   is void on its face." Lona, 202 Cal. App.4th at 112-13.

11        Plaintiff has made no argument or showing with respect to the first, second, and fourth

12   exceptions to tender.  As discussed, she essentially argues that tender should be excused as a

13   matter of equity because she, like the plaintiff in Glaski, claims that because the DOT assignments

14   were made too late in violation of the PSA, defendants had no authority to foreclose on the subject

15   property.  However, the inequity exception to tender generally is invoked only when the

16   foreclosure has not yet occurred.  Farah, 2014 WL 261562 at *3.  In the present case, the

17   foreclosure sale has already been completed.  Moreover, for the reasons discussed below, Glaski

18   represents the minority view and is unpersuasive authority, given the vast weight of California

19   authority rejecting its analysis.[4]

20        Defendants' motion to dismiss for failure to plead tender of all amounts due and owing

21   under the loan is granted.

22        C.    **Claims 1 and 2:  Breach of Contract and Breach of Implied Agreements**[5]

23        As discussed, plaintiff alleges that defendants had no authority to foreclose due to an

24   ───────────────────

25   [4] This issue is now before the California Supreme Court.  See Yvanova v. New Century Mortgage
     Corp., 172 Cal. Rptr.3d 104 (2014).  Additionally, Glaski's authority apparently is at issue in a
26   separate appeal pending before the Ninth Circuit.  See Vasquez v. U.S. Bank, N.A., No. 15-cv-
     02146-DMR, 2015 WL 5158538 at *5 n.8 (N.D. Cal., Sept. 2, 2015).  However, unless and until
27   the California Supreme Court or the Ninth Circuit rule to the contrary, this court continues to
     follow the majority view.

28   [5]

United States District Court
Northern District of California

United States District Court
Northern District of California

1  irregularity in the securitization process---namely, transfers of interest that allegedly were made

2  too late to comply with the PSA, resulting in a broken chain of title.  Through these alleged

3  belated transfers, plaintiff claims that defendants breached the terms of the DOT, PSA, and

4  unspecified "implied agreements."  (FAC ¶¶ 24-39).[6]

5      On defendants' prior motion to dismiss, this court rejected plaintiff's securitization theory.

6  (Dkt. 26 at 4).  Among other things, the court observed that when she signed the DOT, plaintiff

7  agreed that MERS is the beneficiary as well as the "nominee for Lender and Lender's successors and

8  assigns," and, further, that the note "can be sold one or more times without prior notice to Borrower."

9  (FAC, Ex. 1 (DOT at 3, 11)).  Moreover, this court concluded that even if there were some defect in

10  the DOT assignments, plaintiff failed to allege facts showing that those assignments changed her

11  payment obligations.  See Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App.4th 256, 272, 129 Cal.

12  Rptr.3d 467 (2011).  Further, plaintiff failed to allege facts establishing her standing to pursue a

13  claim for breach of the PSA to which she was neither a party nor a third-party beneficiary.  Kirk v.

14  Wells Fargo Bank, N.A., No. C12-05969 SI, 2013 WL 132519 at *3 (N.D. Cal., Jan. 9, 2013)

15  (collecting cases).

16      Although plaintiff asserts that she is not challenging the act of securitization itself, but only

17  irregularities in the process, her claims rely solely on allegations that belated DOT assignments

18  violated the PSA.  (FAC ¶¶ 25-29, 31-32).  And, the fact remains that she has not established her

19  standing to challenge the DOT assignments, or the subsequent notice of default, based on a

20  violation of the PSA.  See Reyes-Aguilar v. Bank of America, N.A., No. 13-cv-05764-JCS, 2014

21  WL 2153792 at *4 (N.D. Cal., Mar. 20, 2014) ("Regardless of how Plaintiffs cast this theory, they

22  do not have standing to enforce the PSA, nor do they have the standing to challenge the

23  Assignment, or the subsequently-recorded [Substitution of Trustee] and NOD, on the basis of a

24  violation of the PSA.").

25      Relying on Glaski v. Bank of America, 218 Cal. App.4th 1079 (2013), plaintiff contends

26

27  [6] Plaintiff does not specifically allege the existence or breach of any distinct implied agreement.
   Moreover, her claim for breach of implied agreements is based on the same allegations underlying

28  her claim for breach of express agreements (i.e., the DOT and the PSA).  Accordingly, this court
   treats the claims for breach of express and implied agreements together.

that she properly may challenge the alleged defective assignments.  <u>Glaski</u> held that the plaintiff borrower had standing to challenge an assignment of his note because defendants failed to make the assignment before the trust's closing date.  <u>Id.</u> at 1096-1098.  <u>Glaski</u>, however, represents the minority view and has been roundly criticized by a number of California state and federal courts. And, "[c]ourts in this District have expressly rejected *Glaski* and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the securitization process."  <u>Miller v. JPMorgan Chase Bank, N.A.</u>, No. 5:13-cv-03192-EJD, 2014 WL 3921361 at *4 (N.D. Cal., Aug. 8, 2014) (citing cases); <u>Reyes-Aguilar</u>, 2014 WL 2153792 at *4 (same).  Indeed, one court in this district recently observed that, in unpublished decisions, "the Ninth Circuit has twice considered *Glaski*, twice declined to follow it, and twice criticized its reasoning."  <u>See</u> <u>Vasquez v. U.S. Bank, N.A.</u>, No. 15-cv-02146-DMR, 2015 WL 5158538 at *5 (N.D. Cal., Sept. 2, 2015) (citing <u>In re Davies</u>, 565 Fed.Appx. 630, 633 (9th Cir. 2014) and <u>Hunt v. U.S. Bank, N.A.</u>, 593 F.3d Appx. 730, 731 (9th Cir. 2015)).  Given the vast weight of California authority to the contrary, this court does not find <u>Glaski</u> persuasive.

This court continues to adhere to the majority view rejecting a borrower's ability to challenge the validity of a deed assignment because plaintiff cannot plausibly allege any prejudice or harm resulting from a failed assignment.  <u>See, e.g.</u>, <u>Jenkins v. JPMorgan Chase Bank, N.A.</u>, 216 Cal. App.4th 497, 515 (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions."); <u>Fontenot</u>, 198 Cal. App.4th at 272 ("Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect.  Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note.").

In any event, a claim for breach of contract (express or implied) requires plaintiff to show that she performed or was excused from performing her obligations under the contract.  Plaintiff

United States District Court
Northern District of California

1    cannot do so because she indisputably defaulted on her payments.  For this same reason, plaintiff

2    also cannot plausibly claim that she was damaged by the alleged defective deed assignments.

3    Plaintiff claims that she suffered damages in that (1) she made payments to an entity that is not the

4    true holder of the beneficial interest in the deed of trust; and (2) after she defaulted, she lost the

5    subject property to an entity that did not have the right to initiate foreclosure proceedings.  (FAC

6    ¶¶ 30, 33, 38).  However, she does not allege that the alleged post-closing transfers of the deed of

7    trust prejudiced her ability to fulfill her loan obligations.  And, there is no prejudice flowing from

8    foreclosure where a borrower defaults and cannot demonstrate that the allegedly improper

9    assignment interfered with her ability to pay or that the original lender would have refrained from

10   foreclosure under the circumstances.  Fontenot, 198 Cal. App.4th at 272.

11          For these reasons, the court concludes that defendants' motion should be granted and that

12   another opportunity for amendment will be futile.  Claims 1 and 2 are dismissed without leave to

13   amend.

14          **D.      Claim 3:  Slander of Title**

15          Under California law, a slander of title claim requires a plaintiff to establish four elements:

16   "(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which

17   causes direct and immediate pecuniary loss."  Manhattan Loft, LLC v. Mercury Liquors, Inc., 173

18   Cal. App.4th 1040, 1051 (2009).  This court previously dismissed this claim for failure to plead

19   tender and insofar as the claim was based on plaintiff's securitization theory and her challenge to

20   MERS' authority to transfer the beneficial interest in the deed of trust.

21          In the FAC, plaintiff continues to assert that the assignments of the beneficial interest in

22   the DOT are false due to the improper securitization of her loan and because one of the

23   assignments was robo-signed by Stacy Sandoz for MERS when, plaintiff claims, Sandoz actually

24   worked for defendant Aurora.  She claims that the allegedly false recordings disparaged her title to

25   the property and forced her to retain attorneys to bring the instant action to cancel instruments.

26          For the reasons discussed above, this claim is dismissed without leave to amend for failure

27   to plead tender of the outstanding loan obligation.

28          To the extent the FAC continues to assert that the subject documents are false based upon

United States District Court
Northern District of California

1    plaintiff's securitization theory, this claim is dismissed without leave to amend.  See, e.g., Reyes-

2    Aguilar, 2014 WL 2153792 at *8 (dismissing plaintiffs' slander of title claim insofar as it was

3    based upon plaintiff's theory that belated assignment of the DOT broke the chain of title, leaving

4    defendants with no authority to record the subject documents).

5            In her opposition papers, plaintiff nevertheless asserts that the chain of title was also

6    broken because "MERS cannot and did not possess a beneficial interest in Plaintiff's Deed of

7    Trust according to MERS's internal documents" and "MERS' own policies acknowledge that it

8    does not have the authority to transfer the beneficial interest in a Deed of Trust without the

9    approval of the true, current beneficial interest holder."  (Opp. at 9).  These assertions appear

10   nowhere in the FAC and are conclusory in any event.  Moreover, this court already rejected

11   plaintiff's theory that MERS lacked authority to transfer beneficial interest in the DOT.  (Dkt. 26

12   at 4).  When she signed the DOT, plaintiff agreed that MERS is the beneficiary as well as the

13   "nominee for Lender and Lender's successors and assigns," and, further, that the note "can be sold one

14   or more times without prior notice to Borrower."  (FAC, Ex. 1 (DOT at 3, 11)).  "Under California

15   law, "MERS, as nominal beneficiary, has the power to assign its interest under a deed of trust.'"

16   Ogilvie v. Select Portfolio Servicing, No. 12-cv-001654 DMR, 2012 WL 3010986 at *3 (N.D.

17   Cal., July 23, 2012) (quoting Herrera v. Fed. Nat'l Mortg. Ass'n., 205 Cal. App.4th 1495, 1498,

18   141 Cal. Rptr.3d 326 (2012)).  Plaintiff's apparent attempt to resurrect this claim based on MERS'

19   alleged lack of authority to transfer the beneficial interest in the DOT is rejected.

20           This court previously found that plaintiff sufficiently pled falsity of the November 16,

21   2011 deed assignment based on allegation that the document was robo-signed.  Nevertheless, on

22   the record presented, this court concludes that plaintiff cannot satisfy the second prong of a slander

23   of title claim, which requires that the publication be without privilege or justification.  Although

24   defendants said nothing about it, plaintiff now concedes in her opposition papers that the privilege

25   under California Civil Code § 47(c)(1) applies to the subject documents.  That statute provides

26   that "[a] privileged publication or broadcast is one made:  (c) [i]n a communication, without

27   malice, to a person interested therein, (1) by one who is also interested . . .."  Cal. Civ. Code §

28   47(c)(1).  As plaintiff now acknowledges, "[n]onjudicial foreclosure documents are subject to this

United States District Court
Northern District of California

United States District Court
Northern District of California

1  privilege," Ogilvie, 2012 WL 3010986, but she argues that this case falls within the malice

2  exemption to that privilege.  The court disagrees.

3      "An exemption to the section 47 privilege arises upon an allegation of malice."  Ogilvie,

4  2012 WL 3010986 at *4; see also Kachlon v. Markowitz, 168 Cal.App.4th 316, 85 Cal.Rptr.3d

5  532 (2008)) ("Absent factual allegations of malice, a trustee's performance of the statutory

6  procedures in a nonjudicial foreclosure is subject to the qualified, common-interest privilege of

7  California Civil Code § 47(c)(1).")).  "Malice requires 'that the publication was motivated by

8  hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground

9  for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's

10  rights.'"  Ogilvie, 2012 WL 3010986 at *4 (quoting Kachlon, 168 Cal.App.4th at 336, 85

11  Cal.Rptr.3d 532)).  The FAC alleges that MERS and Aurora Bank "acted with malice and a

12  reckless disregard for the truth" when they recorded the November 16, 2011 assignment of the

13  DOT based on use of the alleged robo-signer, Stacy Sandoz.  (FAC ¶ 45).  However, courts have

14  rejected such allegations as conclusory and insufficient to establish malice, noting that "'the mere

15  formulation of false documents is inadequate to plead malice.'"  Nguyen v. JPMorgan Chase

16  Bank, N.A., No. CV12-04183 PSG, 2012 WL 4942816 at *4 (N.D. Cal., Oct. 17, 2012) (quoting

17  Ogilvie, 2012 WL 3010986 at *4).

18      Defendants' motion to dismiss this claim is granted without leave to amend.

19      **E.  Claim 4:  Wrongful Foreclosure**

20      In order to successfully state a claim for wrongful foreclosure, plaintiff must plead that (1)

21  the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property

22  pursuant to a power of sale in a mortgage or deed of trust; (2) she was prejudiced or harmed; and

23  (3) she tendered the amount of the secured indebtedness or was excused from tendering.  Lona,

24  202 Cal.App.4th at 104.

25      Now citing to Glaski, the FAC continues to allege that, due to the alleged faulty

26  securitization of the loan, defendants had no authority to foreclose.  For the reasons discussed

27  above, this court rejects that theory and finds Glaski unpersuasive.  See Reyes-Aguilar, 2014 WL

28  2153792 at *10 (rejecting alleged faulty securitization theory as the basis for the plaintiff's

wrongful foreclosure claim).

Moreover, this court previously dismissed this claim for failure to plead tender, and plaintiff has not remedied that defect in her amended pleading.  Additionally, this claim previously was dismissed because plaintiff failed to sufficiently plead prejudice.  Plaintiff does not deny that she defaulted on her loan, and courts have held that the requisite prejudice or harm is not established where the complaint "does not suggest that the foreclosure would have been averted but for the[] alleged deficiencies."  <u>Reynoso v. Paul Financial, LLC</u>, No. 09-3225 SC, 2009 WL 3833298 at *4 (N.D. Cal., Nov. 16, 2009).  Plaintiff has not remedied this defect in the FAC.  This court finds that further amendment would be futile, and this claim is dismissed without leave to amend.

### F.      Claim 6:  TILA

The FAC seeks damages for alleged TILA violations as follows:   Plaintiff alleges that defendants "claim to be successors in interest" to the original lender and therefore "violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders." (FAC ¶ 63).  Plaintiff further alleges that defendants violated TILA by recording faulty assignments of the DOT.  (<u>Id.</u> ¶ 64).  And, even if the DOT assignments were valid, plaintiff claims that defendants violated TILA § 1641(g) by failing to notify her of the assignments within 30 days after the loan was transferred.  (<u>Id.</u>).

For the reasons stated above, defendants' motion to strike this claim is granted.  In any event, this court concludes that the claim should be dismissed without leave to amend.

With respect to the alleged violations that reportedly occurred at the origination of the loan, plaintiff's claim is time-barred.  An action under TILA for actual or statutory damages must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Generally, the limitations period begins to run "from the date of consummation of the transaction."  <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir.1986).  Here, plaintiff signed the loan

1    documents no later than February 2007.  (FAC ¶ 2 and appended DOT; RJN Ex. A).  This lawsuit

2    was not filed until December 10, 2012, nearly six years later.

3         The FAC does not allege sufficient facts demonstrating that the limitations period should

4    be tolled.  "[E]quitable tolling may, in the appropriate circumstances, suspend the limitations

5    period until the borrower discovers or had reasonable opportunity to discover the fraud or

6    nondisclosures that form the basis of the TILA action."  King, 784 F.2d at 915.  The doctrine of

7    equitable tolling applies in situations where, despite all due diligence, the party invoking the

8    doctrine is unable to obtain vital information bearing on the existence of the claim, or where he

9    has been induced or tricked by his adversary's misconduct into allowing the deadline to pass.

10   Hensley v. United States, 531 F.3d 1052, 1057-58 (9th Cir. 2008).  Here, the FAC asserts that the

11   limitations period was "tolled due to Defendants' failure to effectively provide the required

12   disclosures and notices, including but not limited to Defendants' failure to provide disclosures

13   regarding payment schedules and terms and violations of prohibitions regarding high-rate, high-

14   fee loans, and assignment of ownership interest in Plaintiffs' loan."  (FAC ¶ 65).  However, "the

15   mere existence of TILA violations does not support equitable tolling of TILA's statutes of

16   limitations.  Quach v. Bank of America, N.A., No. 5:13-cv-00467 EJD, 2013 WL 3788827 at *3

17   (N.D. Cal., July 17, 2013) (citing Garcia v. Wachovia Mortg. Co., 676 F.Supp.2d 895, 906 (C.D.

18   Cal. 2009)).  In her opposition, plaintiff simply reiterates that the limitations period is tolled "due

19   to Defendants' failure to effectively provide the required disclosures and notices."  (Dkt. 33 at 20).

20   This lack of sufficient factual allegation (or even a suggestion that she could plead such facts)

21   demonstrates that amendment would be futile.

22        Even if plaintiff's claim were timely, it fails to the extent plaintiff bases it on the alleged

23   faulty assignments due to the claimed violation of the PSA.  For the reasons discussed above,

24   plaintiff does not have standing to challenge alleged violations of that agreement.

25        Moreover, the allegations of the FAC are vague and entirely conclusory.  Indeed, plaintiff

26   does not allege what "material disclosures" reportedly were inaccurate, except for highly

27   conclusory assertions that the alleged inaccurate disclosures pertained to "payment schedules and

28   terms and violations of prohibitions regarding high-rate, high-fee loans, and assignment of

United States District Court
Northern District of California

14

ownership interest in Plaintiffs' loan." (FAC ¶ 65). Nor does she allege how those allegedly inaccurate disclosures violated TILA, or even what sections of TILA were violated.

Further, the FAC fails to allege sufficient facts demonstrating that defendants can be held liable for alleged inaccurate disclosures made by the original lender. "The only parties who can be liable for TILA violations are the original creditor and assignees of that creditor." Torres v. Wells Fargo Home Mortgage, Inc., No. C10-04761 CW, 2011 WL 11506 at *6 (N.D. Cal., Jan. 4, 2011); 15 U.S.C. §§ 1640, 1641). "Servicers of consumer obligations are not treated as assignees for purposes of imposing liability unless they are also the owner of the obligation." Id.; 15 U.S.C. § 1641(f). Additionally, TILA provides that, for voluntary assignments, a creditor's assignee may be held liable for a creditor's TILA violations, but "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). As discussed, the FAC fails to sufficiently identify what the purported inaccurate disclosures are, much less whether they were apparent on the face of the disclosure statement.

The FAC also fails to state a claim for violation of TILA § 1641(g). That statute provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . .." 15 U.S.C. § 1641(g). "But a 'creditor is only liable for actual damages sustained as a result of its alleged' violation of section 1641(g)." Dubinsky v. Chevy Chase Bank, No. C12-02765 CRB, 2012 WL 5194090 at *3 (N.D. Cal., Oct. 19, 2012) (quoting Deerink v. Bank of New York Mellon, N.A., No. 11–1735, 2012 WL 3234027, at *5 (E.D.Cal., Aug. 6, 2012)). Here, the FAC vaguely alleges that "[a]s a direct and proximate result of Defendants' violations, Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction." (FAC ¶ 67). Plaintiff further asserts that "Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants." (Id. ¶ 68). These allegations are far too speculative to support a claim under § 1641(g). See Che v. Aurora Loan Services, LLC, 847 F. Supp.2d 1205, 1209 (C.D. Cal. 2012) ("Where a creditor fails to comply

United States District Court
Northern District of California

1    with the requirements of § 1641(g), liability only exists for 'any *actual damage* sustained by such

2    person as a result of the failure.'") (quoting 15 U.S.C. § 1640(a)(1)); Dubinsky, 2012 WL

3    5194090 at *3 ("Speculative damages are insufficient to impose liability under section 1641(g)).

4           Defendants' motion to dismiss claim is granted without leave to amend.

5    **G.     Claim 7:  RESPA**

6           The FAC alleges that "Plaintiff submitted a Qualified Written Request ("QWR") pursuant

7    to RESPA procedures for the resolution of loan servicing disputes under 12 U.S.C. § 2605,

8    Section 6, to Defendants for information pertaining to Plaintiff's Note transaction and related

9    indebtedness."  (FAC ¶ 71).  Plaintiff claims that defendants violated RESPA § 2605 by failing to

10   respond to that QWR.  (Id. ¶ 72).  The FAC also reiterates that, as a result of the allegedly

11   improper securitization of her loan and the alleged faulty assignments of the DOT, defendants

12   "cannot accurately or truthfully identify the party on whose behalf they were acting in servicing

13   Plaintiff's Note as of the date of Plaintiff's QWRs and more importantly, into whose pockets

14   Plaintiff's mortgage payments were being deposited."  (Id. ¶ 76).

15          For the reasons discussed above, defendants' motion to strike this claim is granted.  In any

16   event, this court concludes that this claim should be dismissed without leave to amend.

17          RESPA provides that "[i]f any servicer of a federally related mortgage loan receives a

18   qualified written request from the borrower (or an agent of the borrower) for information relating

19   to the servicing of such loan, the servicer shall provide a written response acknowledging receipt

20   of the correspondence within 5 days . . . unless the action requested is taken within such period."

21   12 U.S.C. § 2605(e)(1)(A).  "'A loan servicer only has a duty to respond if the information request

22   is related to loan servicing.'"  Lawther v. Onewest Bank, No. C10-0054 RS, 2010 WL 4936797 at

23   *6 (N.D. Cal., Nov. 30, 2010) (quoting Copeland v. Lehman Bros. Bank, FSB, No. 09–1774, 2010

24   WL 2817173, at *3 (S.D.Cal. July 15, 2010)).  "If a loan servicer fails to comply with the

25   provisions of [section] 2605, a borrower shall be entitled to any actual damages to the borrower as

26   a result of the failure' and any additional damages, as the court may allow, in the case of a pattern

27   or practice of noncompliance with the requirements of [section 2605]."  Id. (quotation marks and

28   citations omitted).

1    Here, the FAC simply alleges that unspecified defendants failed to respond to a QWR

2    plaintiff submitted at an unspecified time to an unspecified party.  Plaintiff has not submitted a

3    copy of the QWR and does not allege any details about its contents, except to say that she asked

4    "for information pertaining to Plaintiff's Note transaction and related indebtedness."  (FAC ¶ 71).

5    Nor has she alleged that the QWR contained a statement why she believed her account was in

6    error or sufficient details about other information she sought.  12 U.S.C. § 2605(e)(1)(B)(ii).  Such

7    conclusory allegations are insufficient to state a plausible claim for relief.  Iqbal, 129 S. Ct. at

8    1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

9    statements, do not suffice.").

10    Moreover, plaintiff has not sufficiently alleged that she suffered pecuniary damages

11    resulting from the purported RESPA violation.  "Although [RESPA § 2605] does not explicitly set

12    this out as a pleading standard, a number of courts have read the statute as requiring a showing of

13    pecuniary damages in order to state a claim."  Allen v. United Fin. Mortgage Corp., 660 F.

14    Supp.2d 1089, 1097 (N.D. Cal. 2009).  "This pleading requirement has the effect of limiting the

15    cause of action to circumstances in which plaintiffs can show that a failure of notice has caused

16    them actual harm."  Id.  Here, the FAC alleges that "[p]laintiff's actual damages include but are

17    not limited to devastation of her reputation and credit rating, monetary damages, and the loss of

18    title to her property through the wrongful foreclosure upon her."  (FAC ¶ 77).  She further alleges

19    that "general damages also include mental anguish, inconvenience, and worries through the loss of

20    her home, as well as late fees . . .."  (Id. ¶ 78).  The FAC asserts that defendants concealed the true

21    owner of the loan and that plaintiff was not properly credited for her mortgage payments.  (FAC ¶

22    76).  Plaintiff has not, however, alleged facts demonstrating a causal relationship between the

23    alleged damages and the purported RESPA violation.  Torres, 2011 WL 11506 at *8 ("The

24    plaintiff must also allege a causal relationship between the alleged damages and the RESPA

25    violation.").  And, in view of her undisputed default, it does not appear that she could.

26    For the first time in her opposition papers, plaintiff asserts that:

27    Defendants also violated RESPA by failing the Housing and Urban
     Development's (HUD's) 1999 Statement of Policy two-part test for
28    determining the legality of lender payments to mortgage brokers for table

United States District Court
Northern District of California

funded transactions and intermediary transactions under RESPA.  This test requires that total compensation be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA and that the interest and income that Defendant has gained is not disproportionate to the situation. Defendants' failure to disclose that they will gain a financial benefit while Plaintiff suffers financially as a result of the loan product, sold to Plaintiff amounts to a RESPA violation under this test in that the benefit to Defendants (also while in violation of their own governing documents (the PSA), California law, Civil Code § 2932.5, and TILA) is unconscionable in the face of the detriment to Plaintiff of foreclosure and loss of equity and/or interest in the property.  Defendants violated RESPA because the payments between the Plaintiff and Defendants were misleading and designed to create a windfall, and not reasonably related to services performed.  These actions were deceptive, fraudulent and self-serving.  Defendants' violation of the PSA indicates a breach of RESPA as stated herein due to the unconscionability of the transaction.  The late recording of the assignment invalidates the foreclosure, due to this and other violations, despite the provisions of California Civil Code § 2934, because it is otherwise objectionable and illegal as alleged herein.

(Dkt. 33 at 21-22).  In addition to being conclusory, vague, obscure, and without proper legal citation, these assertions appear nowhere in the FAC.  Moreover, for the reasons discussed above, this court rejects this claim insofar as plaintiff now seeks to base it on her theory re the alleged faulty assignments and violation of the PSA.

Plaintiff's RESPA claim is dismissed without leave to amend.

**H.     Claim 8:  FDCPA**

The FAC alleges that defendants are debt collectors within the meaning of the FDCPA and that they violated that statute by failing to include the FDCPA Mini Miranda Warning, i.e., a notice that defendants were debt collectors attempting to collect a debt.  (FAC ¶ 82).  Plaintiff further alleges that "[t]he debt collector's debt validation notice should have the amount of the debt, the name of the creditor to whom the debt was owed and that Plaintiff had thirty (30) days to dispute the debt" and "should also have contained notification that Plaintiff had the right to have the verification mailed to Plaintiff, and that Plaintiff could request the name and address of the original creditor within thirty (30) days." (Id. ¶ 84).  The FAC alleges that plaintiff suffered damages in that "she suffered a diminution in value to the Subject Property" and because defendants' alleged conduct "affect[ed] the purchase price and vendibility of the Subject Property in an amount to be proven at trial."  (Id. ¶ 86).

For the reasons discussed above, defendants' motion to strike this claim is granted, and this

United States District Court
Northern District of California

United States District Court
Northern District of California

court concludes that the claim should be dismissed anyway.  The FAC fails to allege specific facts

supporting plaintiff's conclusory assertion that defendants are debt collectors under the FDCPA.

Numerous courts within the Ninth Circuit conclude that nonjudicial foreclosures do not constitute

debt collection under the FDCPA.  Pratap v. Wells Fargo Bank, N.A., 63 F. Supp.3d 1101, 1114

(N.D. Cal. 2014) (citing Ligon v. JPMorgan Chase Bank, No. C11-2504 MEJ, 2011 WL 2550836

at *3 (N.D. Cal., June 27, 2011)).  In any event, plaintiff does not allege that defendants "engaged

in any action beyond statutorily mandated actions for nonjudicial foreclosure," which is required

to properly plead an FDCPA claim in the foreclosure context.  See Natividad v. Wells Fargo Bank,

N.A., No. 3:12-cv-03646 JSC, 2013 WL 2299601 at *9 (N.D. Cal., May 24, 2013).

Plaintiff's FDCPA claim is dismissed without leave to amend.

## I.       Claim 5:  California Business & Professions Code § 17200

Although "[v]iolation of almost any federal, state, or local law may serve as the basis for a

UCL claim,"  Plascencia v. Lending 1st Mortgage, 259 F.R.D. 437, 448 (N.D. Cal. 2009),

plaintiff's § 17200 necessarily rises or falls with her other claims for relief.  Because all of

plaintiff's underlying claims for relief have been dismissed without leave to amend, her § 17200

claim is also dismissed without leave to amend.

## III.     MOTION TO EXPUNGE LIS PENDENS

Defendants also move for an order expunging a lis pendens plaintiff filed against the

subject property.  Federal courts look to state law in such matters.  28 U.S.C. § 1964.  Under

California law, a court must expunge a lis pendens if it finds either that "the pleading on which the

notice is based does not contain a real property claim," Cal. Civ. Proc. § 405.31, or that "the

claimant has not established by a preponderance of the evidence the probable validity of the real

property claim," Cal. Civ. Proc. § 405.32.  "[T]he burden is on the party opposing the motion to

show the existence of a real property claim."  Kirkeby v. Superior Ct., 33 Cal.4th 642, 647, 93

P.3d 395 (2004) (citing Cal. Civ. Proc. Code § 405.30).  Relevant to plaintiff's claims here, a real

property claim is one "which would, if meritorious, affect . . . title to, or the right to possession of,

specific real property . . .." Cal. Civ. Proc. Code § 405.4.  "Probable validity" means that "it is

more likely than not that the claimant will obtain a judgment against the defendant on the claim."

1  Cal. Code Civ. Proc. § 405.3; Orange County v. Hongkong and Shanghai Banking Corp. Ltd., 52

2  F.3d 821, 824 (9th Cir.1995).

3      Defendants also request an award of attorney's fees---if not from plaintiff herself, then

4  from her attorneys. The court shall award the party prevailing on a motion to expunge lis pendens

5  reasonable attorney's fees and costs of making or opposing the motion, unless the court finds that

6  the other party acted with substantial justification or that other circumstances make such an award

7  unjust. Cal. Code Civ. Proc. § 405.38.

8      Because the court has granted defendants' motions to strike and to dismiss and dismissed

9  the FAC in its entirety, plaintiff is left without any claims (real property or otherwise), and

10  defendants' motion to expunge lis pendens is granted. Nevertheless, the court finds that an award

11  of fees would be unjust in view of plaintiff's apparent financial difficulties. Additionally,

12  plaintiff's FAC largely was based upon Glaski. Although that case has been heavily criticized and

13  rejected by the majority of courts to consider it, Glaski has not been overruled and this court

14  cannot say that plaintiff's reliance upon it was clearly frivolous.

**ORDER**

16      Based on the foregoing, defendants' motion to dismiss the FAC is granted without leave to

17  amend and defendants' motion to expunge lis pendens is granted. The clerk shall enter judgment

18  and close this file.

19      SO ORDERED.

20  Dated:  January 15, 2016

                                          _____
22                                        HOWARD R. LLOYD
                                          United States Magistrate Judge

*United States District Court*
*Northern District of California*

5:13-cv-00482-HRL Notice has been electronically mailed to:

Laura R. Jacobsen      lrj@severson.com, co@severson.com, jc@severson.com

Mary Kate Sullivan      mks@severson.com, jc@severson.com, vhn@severson.com

Megan Ann Dailey      saveyourhouse70@gmail.com

Michael James Yesk      yesklaw@gmail.com, cc.yesklaw@gmail.com, jy.yesklaw@gmail.com, pl.yesklaw@gmail.com, saveyourhouse70@gmail.com